

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0669-13

### GREGORY THORNTON, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### LUBBOCK COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and
WOMACK, KEASLER, and HERVEY, JJ., joined. KELLER, P.J., filed a concurring
opinion. COCHRAN, J., filed a dissenting opinion in which MEYERS and JOHNSON, JJ.,
joined. ALCALA, J., filed a dissenting opinion in which MEYERS, JOHNSON, and
COCHRAN, JJ., joined.

### OPINION

After a jury trial, the appellant was convicted of the third-degree felony offense of

tampering with evidence, on a theory of concealment,[1] for reaching into his pocket, pulling

---

[1] TEX. PENAL CODE § 37.09(c), (d)(1) ("A person commits an offense if the person[,] . . .
knowing that an offense has been committed, . . . conceals any record, document, or thing with intent

out a crack pipe, and dropping it to the ground in the presence of two police officers.[2]   On

appeal, the Seventh Court of Appeals deemed the evidence to be insufficient to support a

conviction for tampering with evidence by concealment because, with respect to the element

of concealment, the evidence showed that "at least one of the officers on the scene . . . was

aware of the presence of the item alleged to have been concealed" at all times.[3]  Accordingly,

it reversed the judgment of the trial court and ordered that the defendant be acquitted.[4]

After this Court, on initial discretionary review, remanded the cause for the court of

appeals to consider reforming the judgment to reflect a conviction for *attempted* tampering

with evidence,[5] the court of appeals, in a published opinion, explicitly declined to do so.[6] We

granted the State's petition for discretionary review to address three issues relating to the

court of appeals's opinion on remand: 1) Whether the court of appeals erred to hold that the

State failed to "preserve" the issue of reformation; 2) Whether the court of appeals erred to

---

to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense.").

[2]

*Thornton v. State*, 377 S.W.3d 814, 816 (Tex. App.—Amarillo 2012).

[3]

*Id.* at 818.

[4]

*Id.*

[5]

*Thornton v. State*, No. PD-1517-12, 2013 WL 105874 (Tex. Crim. App. Jan. 9, 2013) (not designated for publication).

[6]

*Thornton v. State*, 401 S.W.3d 395, 401 (Tex. App.—Amarillo 2013).

rule that reformation may be used only to reform the "aggravating elements" of an offense; and 3) Whether the court of appeals erred to conclude that there is insufficient evidence to support a conviction for attempted tampering with evidence. We will reverse.

## I. FACTS AND PROCEDURAL POSTURE

On April 11, 2008, Lubbock Police Officers Meil and Roberts, dressed in plain clothes and driving an unmarked car, were assigned to burglary patrol in a residential neighborhood. At approximately 7:30 a.m., as "[t]he sun was coming up," Meil and Roberts spotted the appellant and a female companion walking in the middle of a street that was lined on either side by an unobstructed sidewalk. Seeing this, Roberts drove toward the curb in order to cite the appellant and his companion for violating the "Use of Sidewalk" provision of the Texas Transportation Code.[7] As the officers' vehicle was pulling over, the appellant and his companion stepped from the street onto the sidewalk and ultimately continued to walk with their backs to the officers' car.

By the time Meil and Roberts exited their vehicle, the appellant and his companion were approximately ten to fifteen feet away. After stepping onto the sidewalk, the officers ordered the appellant and his companion to stop. As the appellant turned around, Meil and Roberts—now twenty feet from the appellant—identified themselves as police officers and showed the appellant their badges and sidearms. Apparently realizing that the two men in

---

[7] *See* TEX. TRANSP. CODE § 552.006(a) ("A pedestrian may not walk along and on a roadway if an adjacent sidewalk is provided and is accessible to the pedestrian.").

front of him were police officers, the appellant reached into his pocket and dropped a small object that broke when it hit the sidewalk, producing the distinctive sound of shattering glass. After dropping the object, the appellant approached the officers. The broken pieces of the object remained in the middle of the sidewalk where the appellant had dropped it.

Because of his position on the sidewalk, Meil did not actually see the appellant drop the object. Roberts, on the other hand, never lost sight of the object from the moment the appellant removed it from his pocket. Roberts, having his own suspicions as to the nature of the object, directed Meil to inspect it. Based on its shape, contents, and the presence of burn marks, Meil was able to confirm that the object was, in fact, a crack pipe. The officers then arrested the appellant for possession of drug paraphernalia,[8] and he was ultimately charged by indictment with tampering with evidence by concealment.

## A. At Trial

The appellant exercised his right to a jury trial on guilt-innocence, but elected to have the trial court assess punishment. The State's only witnesses at the guilt phase were Meil and Roberts. During the course of direct examination, Roberts confirmed that the appellant had "stealthfully reached in [his pocket], pulled [the pipe] out palming it, and then dropped it" as he walked toward the officers. While cross-examining Roberts, defense counsel directed

---

[8]  *See* TEX. HEALTH & SAFETY CODE § 481.125(a) ("A person commits an offense if the person knowingly or intentionally uses or possesses with intent to use drug paraphernalia to . . . inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter.").

him to re-enact the appellant's precise movements when he reached into his pocket and dropped the pipe. When both parties rested and closed, the appellant, seizing on the fact that Roberts testified that he had never lost sight of the crack pipe, asked the trial court to instruct the jury as to the lesser-included offense of attempted tampering with evidence.[9] The State made no argument opposing the appellant's proposed charge, but the trial court nevertheless rejected it. After deliberation, the jury returned a verdict of guilty on the charge of tampering with evidence by concealment, and the appellant was sentenced by the trial court to a forty-five year term of confinement.[10]

## B. On Appeal

On his initial appeal to the court of appeals, the appellant argued that the evidence upon which the jury relied to convict him was legally insufficient to establish the element of concealment. The State responded, first, that the crack pipe *was* concealed from Roberts, however momentarily, when the appellant "palmed" the pipe as he was removing it from his pocket; and second, that even if Roberts had a clear view of the crack pipe at all times, Meil did not—and that on the basis of the appellant's successful concealment of the evidence from the view of Meil, the appellant's conviction was sufficiently supported by the evidence and should be affirmed. The court of appeals disagreed with the State on both grounds. As to

---

[9] *See* TEX. CODE CRIM. PROC. art. 37.09(4) ("An offense is a lesser included offense if . . . it consists of an attempt to commit the offense charged or an otherwise included offense.").

[10] Because he had been previously convicted of separate sequential felonies, the appellant was subject to enhanced punishment. *See* TEX. PENAL CODE § 12.42(d).

the first ground, the court of appeals simply disputed the State's claim that the pipe was out of Roberts's view, even for a moment;[11] as to the second, the court reasoned that, since "at least one of the officers on the scene . . . was aware of the presence of the item alleged to have been concealed," case law suggests that "[one] officer's awareness of evidence is imputed to other officers."[12]   Accordingly, it reversed the judgment of conviction and rendered a judgment of acquittal as to the tampering charge.[13]

During the pendency of that appeal, however, and before the court of appeals issued its opinion, we issued our own opinion in *Bowen v. State*.[14]  In *Bowen*, we held that a court of appeals, upon finding the evidence supporting a conviction to be legally insufficient, is not necessarily limited to ordering an acquittal, but may instead reform the judgment to reflect a verdict of guilty on a lesser-included offense—even when no lesser-included instruction was given at trial.  In light of this holding, in its initial petition for discretionary review, the State asked this Court to vacate the court of appeals's judgment in this case and remand the cause for "that court to consider the effect of *Bowen*, if any, on its reasoning and

---

[11]

*Thornton*, 377 S.W.3d at 818.

[12]

*Id.*  In its present petition for discretionary review, the State has not requested that we reexamine either of these rulings by the court of appeals.

[13]

*Id.*

[14]

374 S.W.3d 427 (Tex. Crim. App. 2012).

analysis[.]"[15] We granted the State's request.[16]

On remand, the court of appeals gave three reasons why it considered reformation of the judgment to reflect a conviction for the lesser offense to be inappropriate for this case. First, the court of appeals held that "the State waived any error with respect to the trial court's failure to submit a lesser-included offense" when it "stood idly by as the trial court denied Appellant's request for one."[17] Second, and "[n]otwithstanding the issue of waiver," the court of appeals read our opinion in *Bowen* to stand for the proposition that "an appellate court should reform the conviction to the lesser-included offense in [only] those situations where the State has failed to prove an 'aggravating element' of the charged offense, but has met its burden of proof as to the 'essential elements' of the lesser included offense."[18] On the basis of this characterization, the court of appeals deemed *Bowen* "not relevant to [its] decision to acquit rather than reform the judgment," since "[c]oncealment is not an 'aggravating element' of the offense of tampering with evidence, it is the very *sine qu*[*a*] *non* of that offense."[19] Third, according to the court of appeals, "even if *Bowen* were applicable

[15] *Thornton*, 2013 WL 105874, at *1.

[16] *Id*.

[17] *Thornton*, 401 S.W.3d at 400.

[18] *Id*. (citing *Bowen*, 374 S.W.3d at 432).

[19] *Id*. at 401.

to this case, the evidence presented would not be legally sufficient to support a conviction of attempted tampering with evidence."[20]  The court of appeals reasoned that a contrary conclusion would require "total speculation as to whether or not Appellant had the specific intent to 'conceal' the evidence once he removed it from his pocket, or whether he merely intended to dispossess himself of it."[21]

In its present petition for discretionary review, the State has asked us to review each of the court of appeals's justifications for refusing to reform the judgment to reflect a conviction for attempted tampering.  We will address these justifications in turn.

## II. ANALYSIS

### A. Preservation of Error?

After determining that the evidence of concealment was legally insufficient, the court of appeals began its consideration of whether to reform the appellant's judgment by positing that "the State waived any error with respect to the trial court's failure to submit a lesser-included offense by failing to either timely request such a submission or object to the omission of the issue in the jury charge."[22]  We note, as a preliminary matter, that the State has never objected to, nor complained of, the *trial court's* failure to submit a lesser-included

---

[20]

 *Id.*

[21]

 *Id.* at 402.

[22]

 *Id.* at 400.

offense instruction. Rather, the State has complained (and continues to complain) of the *court of appeals's* failure to reform the judgment to reflect a conviction for the lesser offense. Nevertheless, in their briefs, both parties seem to understand the court of appeals's reasoning to be that, by "failing to either timely request such a submission or object to the omission of the issue in the jury charge" during trial, the State essentially "waived" the right to later request a reformation of the judgment on appeal.[23]

Our jurisprudence regarding the availability of judgment reformation after a finding of insufficient evidence began nearly fifteen years ago, in *Collier v. State*.[24] In *Collier*, a four-judge plurality reasoned that an appellate court should not rescue "[t]he [S]tate . . . from a trial strategy" of "not requesting instructions on lesser included offenses [and expecting that] the jury will convict an accused of the greater offense rather than let the accused . . . go scot-free."[25] Unwilling to soften the back-firing effects of the State's "overreaching,"[26] the

---

[23] We note, however, that in the context of error preservation, a "waiver" is an "intentional relinquishment or abandonment of a known right or privilege." *See Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993). It therefore makes little sense to say that *at trial* the State intentionally relinquished a right (*i.e.*, the right to request reformation) that arose only after an action taken by the court of appeals (*i.e.*, a finding of insufficient evidence)—how could the State have "known"? Perhaps it could be argued that the State unknowingly failed to preserve error—in other words, that the State *forfeited* the right to request reformation. But again, "[f]orfeit[ure] . . . refer[s] to the loss of a claim or right for failure to insist upon it by objection, request, motion, or some other behavior calculated to exercise the right in a manner comprehensible to . . . the trial judge." *Id.* How could the State have alerted the trial judge to a possible error (*i.e.*, the failure to reform the judgment to reflect a conviction for the lesser offense) that he was in no position to rectify or obviate?

[24] 999 S.W.2d 779 (Tex. Crim. App. 1999).

[25] *Id.* at 782 (Tex. Crim. App. 1999) (plurality opinion) (quoting *State v. Myers*, 461 N.W.2d

plurality concluded that "a court of appeals may reform a judgment of conviction to reflect conviction of a lesser included offense only if . . . either the jury was instructed on the lesser included offense . . . or one of the parties asked for but was denied such an instruction."[27] As neither of those conditions was met in that case, the plurality voted to affirm the court of appeals's refusal to reform the judgment of conviction.[28]  In a concurring opinion, Judge Keasler noted that he would have allowed courts of appeals to reform judgments to reflect a conviction for a lesser-included offense only under circumstances in which the "lesser-included offense was submitted in the jury charge."[29]

In *Haynes v. State*, a six-member majority of the Court discerned that "[t]he narrowest ground upon which" the *Collier* plurality and Judge Keasler had "agreed is that an appellate court may . . . reform a judgment to reflect a conviction for the lesser-included offense when that . . . offense was submitted in the jury charge."[30]  In the course of reaching this

777, 780-83 (Wis. 1990)).

[26]

*See id.* at 792 (McCormick, P.J., dissenting to denial of State's motion for reh'g) ("*Myers* and the lead plurality opinion . . . penaliz[e] the prosecution for what they perceive to be prosecutorial overreaching.") (internal quotation marks omitted).

[27]

*Id.* at 782.

[28]

*Id.* at 782-83.

[29]

*Id.* at 784 (Keasler, J., concurring).

[30]

273 S.W.3d 183, 187 (Tex. Crim. App. 2008).

conclusion, however, the Court noted that, in the context of double jeopardy, the State is barred from initiating a subsequent prosecution for a lesser-included offense after an appellate reversal for insufficient evidence because "[n]othing prevented the State from requesting a lesser included offense instruction [at trial.]"[31] The *Haynes* majority reasoned that "the State's 'overreaching' conduct in both the double jeopardy and the reformation contexts is the same, thus requiring similar treatment and analysis."[32] Thus, while purporting only to adhere to the narrowest ground agreed upon in *Collier*, *Haynes* gave credence to the notion that reformation is not an appropriate remedy when the State "overreaches" by failing to ensure that a lesser-included instruction is given at trial.

The "overreaching" rationale for refusing to reform judgments of conviction thus persisted in our case law until we came to decide *Bowen*.[33] In *Bowen*, the appellant was charged with, and convicted by a jury of, "misapplication of fiduciary property owned by or held for the benefit of [another] for the value of $200,000 or more."[34] The court of appeals, while "conclud[ing] that the evidence was legally insufficient to prove that the misapplied assets . . . equaled $200,000 or more," found that the evidence was sufficient to prove that

---

[31] *Id.* at 186-87 n.5 (internal quotation marks omitted) (quoting *Stephens v. State*, 806 S.W.2d 812, 818-19 (Tex. Crim. App. 1990)).

[32] *Id.* at 187-88.

[33] *Bowen v. State*, 374 S.W.3d 427 (Tex. Crim. App. 2012).

[34] *Id.* at 428.

the misapplied assets equaled $103,344.[35] However, that court was, at the time it issued its opinion, "bound by *Collier*," and so "did not reform the judgment to reflect a conviction for a lesser-included offense[,] because a lesser charge was not submitted to the jury."[36] With no other options available to it, the court of appeals ordered that the appellant be acquitted outright.[37]

This result, "[w]hile compatible with . . . *Collier*," we nonetheless deemed on discretionary review to be "unjust."[38] We concluded that the "purpose" of the *Collier* rule, "which was to prevent the State from overreaching and having an unfair advantage over the defendant . . . has proved to be unworkable in practice and inapplicable in many instances."[39] We noted, significantly, that the *Collier* rationale "does not consider that the defense may also have a strategic reason to not request a lesser-included offense instruction," in that "the defense may hope for outright acquittal" rather than a conviction for a lesser offense.[40] We also observed that the *Collier* rule could operate to prevent judgment reformation in

---

[35] *Id.*

[36] *Id.* at 428-29.

[37] *Id.* at 429.

[38] *Id.* at 432.

[39] *Id.* at 428.

[40] *Id.* at 429.

circumstances in which the State "requests a lesser-included offense, but the trial court does not submit the instruction"—and as the State could not be said to be "going for broke" in such circumstances, the "overreaching rationale" was "impractical[.]"[41]

In light of all of the shortcomings (unjustness, unworkability, inapplicability, and impracticality) attendant to refusing to reform convictions on the basis of either party's "overreaching," both the holding of *Collier* (that the availability of reformation should depend either on the conduct of the parties at trial or the submission or non-submission of a lesser-included instruction) and its rationale (that the parties should not be rescued from their own "gamesmanship" or "overreaching") were repudiated.[42] Thus, post-*Bowen*, courts of appeals are no longer permitted to base their decisions whether to reform a judgment of conviction on either of these considerations. The focus is now on the evidence presented and the lesser-included conviction sought, rather than the parties' respective strategies in failing—or deciding whether—to seek an instruction at trial.

As a review of the preceding cases should make reasonably clear, nowhere in our case law, stretching back to *Collier*, has it ever been suggested that it is the failure to preserve error that would prevent a party from requesting that a judgment be reformed. But that seems to have been precisely the court of appeals's reasoning in this regard. To the contrary, our case law makes it clear that the availability of reformation turns upon the authority of the

---

[41] *Id.* at 430.

[42] *Id.* at 432.

courts of appeals, rather than whether the parties took appropriate steps to *invoke* that authority. Prior to *Bowen*, we held that the courts of appeals were not authorized to intervene on behalf of "overreaching" parties. In *Bowen*, we removed this impediment to the authority of the courts of appeals. Accordingly, the State's "st[anding] idly by as the trial court denied Appellant's request for" a lesser-included instruction had no impact on the authority of the court of appeals to reform the judgment. The court of appeals retained that authority all along, and no procedural hurdle stood in the way of its exercising that authority. The court of appeals erred to suggest otherwise. If reformation is an appropriate remedy in a particular case (an issue to which we turn next), *Bowen* makes clear that it should be applied regardless of whether either party requested or contested—or whether the jury was actually given—an instruction on the lesser-included offense at trial. The State's first point of error is sustained.

## B. The Applicability of *Bowen* to "Essential" Elements

We turn next to the holding of the court of appeals that "*Bowen* is clearly distinguishable from . . . this case and . . . is not relevant to our decision to acquit rather than reform the judgment to reflect a conviction as to the lesser-included offense of attempted tampering with evidence."[43] The court of appeals identified the rationale of *Bowen* to be that "[b]ecause the value of the property misapplied was merely an 'aggravating element' used to determine the degree of the offense, . . . the trial court should have reformed the judgment

---

[43] *Thornton*, 401 S.W.3d at 401.

to reflect a conviction as to the lesser-included offense."[44]  Applying this rationale to the facts of this case, the court of appeals reasoned that "[c]oncealment is not an 'aggravating element' of the offense of tampering with evidence, it is the very *sine qu*[*a*] *non* of that offense.  As such, *Bowen* has no application to the facts of this case and we are not bound to consider whether to reform Appellant's judgment[.]"[45]

### 1. *Bowen v. State*

The court of appeals correctly recognized that the facts underlying our decision in *Bowen* were that "the State failed to prove . . . an aggravating element of the offense, [but] proved the essential elements of the offense of misapplication of fiduciary property beyond a reasonable doubt."[46]  But the court of appeals failed to properly discern the *reasoning* underlying our decision in *Bowen*—and it is the reasoning, rather than the facts, of *Bowen* that should decide its applicability to future cases.  The reasoning of *Bowen* was that an outright acquittal under those circumstances would be "unjust," since that result would involve "usurp[ing]" the "fact finder's determination of guilt."[47]  In other words, *Bowen* directed courts of appeals to focus exclusively on what the jury actually found in the

---

[44]

  *Id.*

[45]

  *Id.*

[46]

  *Bowen*, 374 S.W.3d at 432.

[47]

  *Id.*

course of convicting the appellant of the greater offense and determined that to discount or disregard those sufficiently-evidenced findings would be mistaken.

Extrapolating from that reasoning, we think that the result avoided in *Bowen* (the outright acquittal of an appellant against whom the State had adequately carried its burden except with respect to the extent of an "aggravating element") is no more "unjust" than an acquittal in *any* case in which the jury, by convicting the appellant of the greater-inclusive offense, necessarily (if implicitly) found every element necessary to convict him for the lesser-included offense. Any time the State carries its burden with respect to this lesser offense, and the jury, by its verdict, has necessarily found every constituent element of that lesser offense, the appellant would enjoy an "unjust" windfall from an outright acquittal.[48] At the same time, courts of appeals should limit the use of judgment reformation to those

---

[48] Simply to acknowledge that *Bowen* permits judgment reformation in those cases in which, after a finding that a particular element is not supported by sufficient evidence, a lesser offense is *explicitly* "established by the remaining . . . elements," Dissenting Opinion at 11 (Alcala, J.), is not persuasively to argue that *Bowen* also *limited* reformation to those circumstances. *Bowen*'s limiting principle is that reformation of the trial court's judgment must never "unjust[ly]" operate to "usurp the fact finder's determination of guilt." Pursuant to *that* limiting principle, it is unclear why acquitting when there is an available lesser-included offense under Texas Code of Criminal Procedure Article 37.09(1), (2), or (3), *see id.*, would result in an unfair windfall to the appellant, while acquitting when the jury actually—not just theoretically—albeit implicitly, convicted him of an attempt (Article 37.09(4)) would work any less unfairly to the benefit of the defendant. A more circumscribed approach would not, to our satisfaction, account for the fact that there are circumstances in which a jury, simply by finding that the defendant committed the greater offense, *necessarily* found that he also attempted to commit that offense—and that an outright acquittal under these circumstances, no less than an outright acquittal under circumstances in which there is an available Article 37.09(1), (2), or (3) lesser-included offense, could constitute the same lack of deference to the jury's factual determinations that necessitated reformation in *Bowen*.

circumstances when what is sought is a conviction for a lesser offense whose commission can be established from facts that the jury actually found. To do otherwise would be to usurp the jury's institutional function in the criminal justice system—to determine the facts. Reviewing courts should not, therefore, inquire as to (much less purport to find) what the jury *could have found* had it been tasked with making a finding that it was not originally asked to make; this would be inconsistent with *Bowen*'s deference to jury determinations.[49]

As our recent opinion in *Britain v. State* makes clear, however, simply establishing that the jury's guilty verdict as to the greater offense *also* constitutes a jury finding of the elemental predicates for a conviction of the lesser offense is not necessarily sufficient to justify reformation under *Bowen*.[50] In *Britain*, the appellant was convicted of manslaughter for her allegedly reckless handling of her step-daughter's medical emergency.[51] The court of appeals in that case ordered that the appellant be acquitted, as there was "insufficient evidence that the appellant was aware of but consciously disregarded a substantial and

---

[49]

We did not indulge in this kind of speculation in *Bowen*, since we did not, in that case, have to determine what the jury could have found. Instead, the jury's finding as to the extent of the misappropriation showed that the jury must have found, as a matter of logical necessity, that the appellant misappropriated *at least* $103,344. And as there also happened to be sufficient evidence to prove this amount of misappropriation, reformation of the judgment to reflect a conviction of the lesser offense was appropriate.

[50]

*See Britain v. State*, 412 S.W.3d 518 (Tex. Crim. App. 2013).

[51]

*Id.* at 519.

unjustifiable risk" of death.[52]  On discretionary review, we rejected the State's argument that the court of appeals should have "reformed the verdict to the lesser-included offense of criminally negligent homicide," because in our view the State had also failed to produce any "evidence concerning the standard of care an ordinary person should be held to or that showed the appellant should have been aware of the risk to [the step-daughter]."[53]  We cautioned that "an appellate court should not render a judgment of conviction for a lesser-included offense unless there is proof beyond a reasonable doubt of *all* elements of the lesser-included offense."[54]  We noted that automatically reforming the judgment to a conviction for the lesser offense, without reviewing the sufficiency of the evidence to support the new conviction, ran the risk of allowing "whatever error led to the" conviction for the greater offense to also "extend to" the conviction for the lesser.[55]

---

[52]

*Id.* (internal quotation marks omitted).

[53]

*Id.* at 519, 523.

[54]

*Id.* at 521 (emphasis added).

[55]

*Id.* at 522.  It was in view of this consideration that we said that "[w]hile *Bowen* held that a court of appeals *may* reform a judgment to a lesser-included offense, we have not held, and do not (under these facts) hold, that the court of appeals *must* do so."  *Id.* at 521.  To the extent that this language could be understood to grant courts of appeals unfettered discretion as to whether or not to reform a judgment, we wish to dispel any such notion.  Read in context, this language means only to convey that a court of appeals is not required to reform the judgment when the evidence is insufficient to support the lesser-included offense.  Any broader reading of *Britain* would essentially operate to overrule *Bowen*—if the courts of appeals had unlimited discretion in whether or not to reform the judgment, we could not have justified reversing the court of appeals's judgment in *Bowen* (nor, indeed, would there have been a need for further exposition in *Britain*).

In summary, then, after a court of appeals has found the evidence insufficient to support an appellant's conviction for a greater-inclusive offense, in deciding whether to reform the judgment to reflect a conviction for a lesser-included offense, that court must answer two questions: 1) in the course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense? If the answer to either of these questions is no, the court of appeals is not authorized to reform the judgment. But if the answers to both are yes, the court is authorized—indeed required[56]—to avoid the "unjust" result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense.

## 2. Application

With these concepts in mind, we must determine whether the jury, in the course of finding the appellant guilty of actual tampering with evidence, necessarily found all of the elements of attempted tampering with evidence. A person commits the offense of tampering with evidence "if the person[,] . . . knowing that an offense has been committed, alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related

---

[56] *See* note 55, *ante.*

to the offense."[57] A person commits an attempt if, "with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."[58] Synthesizing these statutory definitions, we conclude that the first prong of the reformation analysis described above can be answered in the affirmative only if the jury, by its verdict, must necessarily have found that, 1) knowing that an offense had been committed, and with 2) the specific intent to conceal the crack pipe,[59]

---

[57]

TEX. PENAL CODE § 37.09(d)(1).

[58]

TEX. PENAL CODE § 15.01(a).

[59]

At first blush, Section 37.09 of the Penal Code seems not to require that the actor *intend* to conceal evidence in order for the actor to incur criminal liability for tampering with evidence. TEX. PENAL CODE § 37.09(d)(1). If this were the case—that is, if the actor could be convicted of tampering with evidence on the basis of a jury finding that he harbored a culpable mental state less than intent with respect to the element of concealment—then a jury finding of guilt as to the completed offense would not necessarily constitute a jury finding of guilt as to the attempt, since a reviewing court would be unable to determine that the jury necessarily found that the actor harbored a "specific intent" to conceal the pipe. *See* TEX. PENAL CODE § 15.01(a).

However, the inclusion of the adverbial phrase "with the intent to impair its verity, legibility, or availability as evidence in any subsequent investigation" necessarily has the effect of requiring that the actor have a concomitant intent to alter, destroy, or conceal the evidence. An actor could not harbor an intent to impair the availability of the evidence, carry out that intent by means of concealment, and yet *not* have had a "conscious objective" to conceal the evidence. *See* TEX. PENAL CODE § 6.03(a) ("A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result."). He could not, for example, merely *know* that his conduct was of the nature of concealment while simultaneously harboring the conscious objective that the concealment render the evidence unavailable at a later date.

This conclusion finds further support in the language of the statute describing the offense of "Tampering with Governmental Record." *See* TEX. PENAL CODE § 37.10(a). In each of the six subsections delineating the categories of conduct that can result in criminal liability under that statute, the Legislature either provided a culpable mental state immediately preceding the *actus reus*,

and 3) the specific intent to impair the availability of the crack pipe as evidence in a later investigation or proceeding, the appellant 4) did an act amounting to more than mere preparation that 5) tended but failed to result in concealment of the crack pipe.

With respect to the first three of these elements, we note that the jury explicitly found these to have been proven when it found the appellant guilty of actual concealment, and so we need not inquire as to whether the jury made an implied or logically-necessary finding as to either of them.[60]  Similarly, with respect to the fourth element, we have no

_____

*e.g., id.* § 37.10(a)(1) (". . . knowingly makes a false entry in, or false alteration of, a governmental record") or provided for a culpable mental state by way of an adverbial phrase following the *actus reus*. *E.g., id.* § 37.10(a)(4) (". . . possesses, sells, or offers to sell a governmental record or a blank governmental record form with intent that it be used unlawfully.").  The tandem use of these two drafting techniques suggests that the Legislature intended them to have the same effect: to provide, in the latter instance, not only for a free-floating and independent culpable mental state, but a culpable mental state *attendant to* the proscribed conduct.  That being the case, the synthesis of the tampering statute with the attempt statute does not operate to attach a higher culpable mental state to the element of concealment than the mental state the jury actually found in the course of convicting the appellant of tampering with evidence.

[60]  The dissent expresses a concern that "[n]o determination was made by the jury" that the appellant "specifically intended to conceal the glass pipe."  Dissenting Opinion at 14 (Alcala, J.).  But the "Court's Charge" to the jury in the appellant's trial read as follows:

> [I]f you find from the evidence beyond a reasonable doubt that . . . the defendant, GREGORY THORNTON, did then and there, knowing that an offense had been committed, to wit: Possession of Drug Paraphernalia, *intentionally and knowingly conceal physical evidence, to wit: glass pipe* with intent to impair the availability of glass pipe as evidence in a subsequent investigation, or official proceeding related to the said offense, then you will find the defendant guilty of the offense of tampering with evidence[.]

(*sic passim*) (emphasis added).  By rendering a general verdict of "guilty," the jury signified its assent to the proposition that the State had carried its burden to prove beyond a reasonable doubt that, *inter alia*, the appellant "intentionally . . . conceal[ed] physical evidence."  For us to fully acquit the appellant on the basis that, *notwithstanding* its explicit finding that the appellant intentionally

difficulty in concluding that the jury must have found this predicate-element to attempted

tampering—an act amounting to more than mere preparation—to have been proven, since

it found that his intentional conduct succeeded in concealing the pipe.[61]

With respect to the fifth element—whether the actions of the appellant "tend[ed] but

fail[ed]" to effect the commission of the offense intended—we note that under Section

---

concealed the pipe, the jury may have harbored an implicit doubt that he "specifically" intended to conceal the pipe, would be to reach a result at least as "unjust" as the acquittal we reproved of in *Bowen*.

Furthermore, even if the jury had made no explicit finding *vis-à-vis* the appellant's specific intent to engage in an act of concealment, by finding that the appellant concealed the crack pipe with the "intent to impair its verity, legibility, or availability as evidence," the jury by implication *necessarily* found that he harbored a specific intent to conceal the pipe. *See* note 59, *supra*. We do not consider these findings to be "essentially the same," Dissenting Opinion at 14, or otherwise co-extensive, but we do perceive the latter to be subsumed by the former. And in light of these overlapping findings, the jury must also necessarily have found that the appellant harbored the specific intent to commit an offense. To hold otherwise would require us to subscribe to the inconsistent notions that the jury 1) believed that the appellant intended to impair the crack pipe's availability as evidence, 2) believed that he intended to conceal the crack pipe, and yet 3) harbored some implicit doubt about whether he specifically intended to commit the crime of tampering with evidence.

[61] Any concern that the jury did not "necessarily f[in]d . . . that the defendant took steps amounting to 'more than mere preparation[,]'" Dissenting Opinion at 4 (Alcala, J.), is similarly problematic. There is a manifest incompatibility between the dual notions that the jury 1) believed that, while harboring an intent to impair the crack pipe's availability as evidence and engaging in conduct intended to conceal the pipe, the appellant in fact *successfully* concealed the pipe, and yet 2) had some lingering doubt that the appellant's conduct never extended past merely *preparing* to conceal the pipe. Given the incompatibility of these notions, subscription to the latter would require us to disregard or reject the former. This we decline to do. Instead, we think that acknowledging a jury finding that the appellant's conduct extended past mere preparation, even if it is implicit, pays appropriate deference to the fact that, by convicting the appellant of the completed offense, in this case the jury *also* effectively convicted him of the attempt. And given that this implicit finding of guilt as to the attempt is, as we will explain, supported by sufficient evidence, reforming the judgment to explicitly reflect a conviction for this offense is precisely the surest way to *avoid* the undesirable result of an appellate court assuming the role of a "thirteenth juror."

15.01(c) of the Penal Code, "[i]t is no defense to prosecution for criminal attempt that the offense attempted was actually committed."[62] Thus, in inquiring whether the jury necessarily found that the appellant's conduct failed to effectuate concealment, we need not inquire as to what the jury could have found, had it been tasked with adjudicating the appellant's guilt as to attempted tampering. Instead, we need only note that, by operation of Section 15.01(c), the jury's finding of actual commission subsumes a finding that the appellant's conduct "tend[ed] but fail[ed]" to effect the commission of tampering with evidence. And in this sense, the jury must necessarily have found that the appellant's actions "tend[ed] but fail[ed]."[63]

Hence, in the course of convicting the appellant of tampering with evidence, the jury must necessarily (if implicitly) have found that, knowing that an offense had been committed, and with the dual specific intents to conceal the crack pipe and impair the availability of the crack pipe as evidence in a later investigation or proceeding, the appellant did an act amounting to more than mere preparation that tended but failed to result in concealment of

---

[62] TEX. PENAL CODE § 15.01(c).

[63] In other words, the Legislature has essentially decided that proving the completed offense suffices to prove that the appellant's conduct "tend[ed] but fail[ed]" to effect commission. As it was the concern of *Bowen* to avoid manifest unjustness, we note that in Section 15.01(c) the Legislature seems to have sought to avoid what it perceived to be an injustice: that of a defendant evading liability for criminal attempt based solely on the State's proof of something greater than a mere attempt—success. Having alleged no more than an inchoate offense, the State should not have to suffer an acquittal in the event that its evidence happens to suffice to establish the completed offense. The "unjust[ness]" rationale underlying *Bowen*, therefore, is not disharmonious with the Legislative fiat contained in Section 15.01(c).

the crack pipe. For this reason, the court of appeals erred to conclude that *Bowen* has no applicability to the facts of this case. The State's second point of error is sustained.

### C. Sufficiency of the Evidence to Show Attempted Tampering

Having determined that the jury's guilty verdict as to tampering with evidence necessarily constitutes a finding that the appellant attempted to tamper with evidence, we turn now to the question of whether there is sufficient evidence to support a conviction for attempted tampering.[64] The court of appeals decided that there is not, primarily on the basis that the State failed to point to any "evidence of a specific intent to conceal" the pipe rather than "merely . . . dispossess himself of it."[65] Finding the evidence to be legally sufficient to support a rational jury finding as to this element, we will reverse the court of appeals as to this holding as well.

In inquiring whether a conviction is supported by sufficient evidence, our task is to "determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."[66] The relevant question "is whether, after viewing the evidence in the

---

[64]

As we have already observed, *ante*, the jury's finding that the appellant's actions succeeded in concealing the pipe as a matter of law subsumes a finding that his actions "tend[ed] but fail[ed]" to effect concealment. But this same reasoning *cannot* lead us to the conclusion that the evidence is sufficient to support such a finding. As we said in *Britain*, "if the evidence does not prove the greater [element] it also may not have proven the lesser." *Britain*, 412 S.W.3d at 521. And as in *Britain*, "we cannot say (without a more thorough examination of the facts) that whatever error led to the finding of" concealment did not also "extend to" the element of "tends but fails." *Id.* at 522.

[65]

*Thornton*, 401 S.W.3d at 402.

[66]

*Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[67]  Under our case law, "[v]iewing the evidence 'in the light most favorable to the verdict' . . . means that the reviewing court is required to defer to the jury's credibility and weight determinations[.]"[68] We should take care, in other words, not to act as a "thirteenth juror" by overturning a jury's duly-delivered verdict simply because we "'disagree' with [that] verdict."[69]

In this case, we are satisfied that the evidence, viewed in the light most favorable to the verdict, is sufficient to support a jury finding that the defendant harbored the specific intent to conceal the crack pipe and thereby impair its later availability as evidence.  We discussed many of the issues relating to the sufficiency of evidence to show an actor's specific intent to commit an offense in *Laster v. State*.[70]  In *Laster*, the jury was presented with evidence that the defendant, while walking past a young girl and her brother on a non-secluded sidewalk, "put his arm around [the girl's] waist and tried to pull her away."[71]  The jury was also able to read a written statement from the defendant about "the voices in my

---

[67]  *Id.* at 319.

[68]  *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

[69]  *Id.* at 901 (quoting *Watson v. State*, 204 S.W.3d 404, 416 (Tex. Crim. App. 2006)).

[70]  275 S.W.3d 512 (Tex. Crim. App. 2009).

[71]  *Id.* at 516.

head [telling] me to grab the little girl."[72]  On the basis of this evidence alone, the jury convicted the defendant of attempted aggravated kidnapping.  We were called upon to review whether the evidence was "sufficient to prove that [the defendant] had the intent to hold or secrete [the victim] in a place where she was unlikely to be found."[73]  In concluding that the evidence was indeed sufficient, we emphasized that, while "[c]ircumstantial evidence of intent must be reviewed with the same scrutiny as other elements of an offense," we would no longer insist on "[e]xcluding every reasonable hypothesis of what the accused was thinking."[74]  Importantly, "[a]s long as the verdict is supported by a *reasonable inference*, it is within the province of the factfinder to choose which inference is *most* reasonable."[75]  In her dissenting opinion, Judge Cochran voiced a helpful insight that the majority did not contest: "[N]ot every grabbing or illegal restraint of a stranger . . . evinces an intent to kidnap."[76]

Similarly, in cases of tampering with evidence, not every act of discarding an object evinces an intent to impair the availability of that object as evidence in a later investigation

---

[72] *Id.*

[73] *Id.*

[74] *Id.* at 519-20.

[75] *Id.* at 523 (emphasis added).

[76] *Id.* at 526 (Cochran, J., dissenting).

or proceeding. There may be cases in which the most inculpating inference the evidence would support is that the accused simply intended to dispossess himself of the object in order to more plausibly disclaim any connection to it.[77] And while it is true that "it is within the province of the factfinder to choose which inference is most reasonable,"[78] it is also true that any inference made by the jury must be supported by sufficient evidence.[79] Unlike the court

---

[77] For similar reasons, we do not disagree with the proposition that "evidence of a person throwing down contraband during a police pursuit or detention is [in]sufficient, *by itself*, to constitute either concealment or attempted concealment[.]" Dissenting Opinion at 2 (Cochran, J.) (emphasis added). But, as we will explain, we perceive the evidence in this case to show *more* than a mere "throwing down [of] contraband," so that that act does not stand "by itself" in supporting a conviction for attempted tampering with evidence.

Relatedly, while it is argued that the "act of abandoning contraband demonstrates prior possession of it, not its concealment," *id.*, we note that in closing, defense counsel made what was, in essence, this same argument to the jury:

> Separating yourself from something that's illegal is not against the law. People walk away from crimes all the time. That's perfectly fine. Concealing it is a crime. * * * We talk about presumption of innocence. You need to presume an innocent intent. Until they prove otherwise beyond a reasonable doubt you have to presume an innocent intent. So what would be an innocent intent? Maybe he thought he had to give it to them. Maybe he thought he had to separate himself from the evidence. Those are all innocent and perfectly legal reasons. And that is what you have to presume.

The jury was therefore well aware that, behind a single course of conduct, a defendant might harbor either a concealing or a non-concealing intent—and the jury decided, based on the evidence presented to it, that the appellant harbored the intent to conceal the pipe. Whatever conclusion we might have reached had we been called to serve on this jury cannot be allowed to inform our determination of the sufficiency of the evidence to support the jury's verdict.

[78] *Laster*, 275 S.W.3d at 523.

[79] *See id.* at 517-18.

of appeals, however, in this case we believe that the inference of a specific intent to impair the pipe's availability as evidence is sufficiently supported by the evidence presented at trial.

First, the jury heard evidence that 1) the crack pipe was both made of glass and smaller than a pen, and 2) at the time of the alleged tampering, "[t]he sun was coming up." We note that it would be reasonable for the jury to conclude that, if the circumstances were such that the appellant stood absolutely no chance of concealing the pipe from the officers, it is less likely that he would have formulated the intent to conceal the pipe from the officers. In other words, it is less likely (though not impossible) that the appellant would harbor a "conscious objective" to cause a result he knew to be impossible.[80]  Therefore, the reasonableness of the jury's inferences about the appellant's intent is informed (at least in some measure) by whether the jury could have reasonably inferred that the appellant believed that the pipe was, in fact, concealable.

From testimony about the pipe's material composition and size, the jury might reasonably have inferred that the pipe was lightweight and at least somewhat translucent; from testimony that "[t]he sun was coming up," the jury might reasonably have inferred that the portion of the sidewalk where the appellant dropped the pipe was not particularly well-lit. Based on these facts, the jury might also reasonably have inferred that the appellant did, in fact, believe it possible to conceal the pipe from the police—even if it lay in the middle of

---

[80]

*See* TEX. PENAL CODE § 6.03(a) ("A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.").

the sidewalk.[81] On the other hand, if the evidence alleged to have been concealed were, say, a neon pink bowling ball dropped at high noon, the jury would have had far less reason to accept an inference that the appellant intended to conceal the evidence from the police.

Second, when the State asked Roberts whether the appellant "stealthily reached in [to his pocket]," Roberts responded affirmatively.[82] While not conclusive, testimony that the appellant had a "stealth[y]" demeanor as he attempted to dispose of the crack pipe would support a finding that he intended that the officers *never* notice the pipe. And while evidence of the appellant's "stealthi[ness]" in reaching for the pipe is not inconsistent with a simple intent to dispossess, it would be inappropriate to adopt this alternative "reasonable hypothesis" on the basis of evidence that could be interpreted—equally reasonably—in one of two ways.[83] After all, we are tasked with viewing the evidence in the light most favorable to the verdict.

---

[81] We re-iterate that whether an object may be "hidden in plain sight" for purposes of tampering by concealment is not an issue that must be (or is) decided today—but if the appellant intended that the object be concealed, even "in plain sight," and took a beyond-preparatory step in effectuating his intent, he may still be subject to liability for criminal attempt.

[82] While the appellant objected, at that point, to the State's leading question, he did not request that the trial court instruct the jury to disregard Roberts's response. Therefore, the jury would not have known to disregard the testimony and would not have acted improperly in considering it as evidence during its deliberation. *See Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007) ("Once evidence has been admitted without a limiting instruction, it is part of the general evidence and may be used for all purposes."). Regardless, "a reviewing court is permitted to consider all evidence in the trial-court record, whether admissible or inadmissible, when making a legal-sufficiency determination." *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

[83] *Laster*, 275 S.W.3d at 521.

Lastly, the jury also heard evidence—on multiple occasions—that the appellant "palmed" the pipe as he removed it from his pocket. The State argued both at trial and on appeal that, in the brief amount of time that the appellant successfully hid the pipe from Roberts's view by "palming" it, the appellant had "conceal[ed]" the pipe, as that term is used in Section 37.09(d)(1) of the Penal Code. While we express no opinion as to whether the "palming" of evidence can constitute actual concealment, we do think that repeated testimony that the appellant "palmed" the pipe is probative evidence of an *intent* to conceal the pipe. The jury would not have been unreasonable in thinking that by "palming" the pipe, the appellant's actions betrayed a "conscious objective" to prevent the officers from ever noticing the pipe. It would also have been reasonable for them to discount the fact that Roberts never lost sight of the pipe, since the element currently under consideration is the appellant's *mens rea*—not his success (or lack thereof) at actual concealment.[84]

Having reviewed the evidence presented at trial and determined that the same is sufficient to support a rational jury finding that the appellant harbored the specific intent to

---

[84] We note, in addition, that the jury was able to witness Roberts physically demonstrate the appellant's actions. As should be reasonably clear, the precise way in which the appellant reached into his pocket and dropped the pipe would be helpful to the jury in discerning the appellant's intent at that moment. Having witnessed the officer's re-enactment of the appellant's bodily movements, the jury was privy to a number of relevant factors that we (and the court of appeals) simply are not, including: whether the appellant dropped the pipe behind his leg or to his side; how far the appellant's hand was from his body when he dropped the pipe; how slowly (or suddenly) his actions occurred; whether his posture or the configuration of his limbs conveyed surreptitiousness; and so on. On a cold appellate record, we are unable to discern any of these important facts—all we know is that the jury witnessed this re-enactment, and, in conjunction with the remaining evidence presented at trial, came to the conclusion that the appellant harbored the intent to impair the pipe's availability in a later investigation or proceeding.

conceal evidence, we conclude that there is sufficient evidence to support a conviction for

attempted tampering with evidence.[85]  In light of this conclusion, we hold that the court of

---

We are aware, of course, that in order for there to be sufficient evidence to uphold a conviction for attempted tampering, the evidence presented at trial would, in addition, need to support rational jury findings that 1) knowing that a crime had been committed, the appellant 2) performed an act amounting to more than mere preparation that 3) tended but failed to effect the commission of the offense intended.  And indeed, in what appears to have been an argumentative afterthought, the court of appeals also opined that, in this case, "[e]vidence of an act amounting to more than mere preparation is totally lacking."  *Thornton*, 401 S.W.3d at 402.  However, both the State's petition for discretionary review and the appellant's reply brief primarily address the court of appeals's holding with respect to specific intent, so we will dispose of these additional elements in summary fashion.

With regard to the first of these additional elements, we note that the jury was presented with evidence that the appellant discarded the pipe only upon discovering that he was in the presence of two police officers.  Based on this evidence, the jury would not have been unreasonable in thinking that the reason the appellant discarded the pipe is that he hoped, one way or another, to avoid criminal liability for his possession of a crack pipe.  With regard to the second of these additional elements, we think that merely by dropping the pipe, the appellant's conduct crossed the "imaginary line which separates . . . 'mere preparation' from . . . an act which 'tends [but fails] to effect the commission of the offense,'" because the appellant's action was the "last proximate act" in the appellant's attempt to commit his intended offense, and the "imaginary line" is drawn short of such acts.  *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex. Crim. App. 1984) (quoting *McCravy v. State*, 642 S.W.2d 450, 460 (Tex. Crim. App. 1980) (op. on State's motion for reh'g)).  Thus, as the evidence is sufficient to show that the appellant dropped the pipe, it is also sufficient to establish that his conduct extended beyond "mere preparation."

Finally, with regard to the third of these additional elements, the appellant argues that "[his] action[s] not only failed to effect commission but would never even 'tend' to effect the commission of the offense, because it is impossible to ever conceal evidence when you drop a piece of glass on concrete in front of an officer staring at you 10-20 feet away."  Appellant's Reply Brief at 17.  We note, however, that where "a defendant is charged with an attempt to commit a crime[,] it is immaterial whether the attempted crime is impossible of completion if, as in the present case, completion was apparently possible to the defendant who was acting with the intent to commit the crime[.]" *See Chen v. State*, 42 S.W.3d 926, 930 (Tex. Crim. App. 2001) (internal quotation marks omitted) (quoting *People v. Grant*, 233 P.2d 660, 667 (Cal. 1951)).  As discussed, the evidence presented at trial was sufficient to support a reasonable inference that 1) concealment of the pipe—even if it lay in the middle of the sidewalk—was apparently possible to the appellant; and that 2) the appellant was acting with the intent to conceal the pipe when he dropped it.  As a result, the jury was given sufficient evidence to reasonably conclude that the appellant's conduct would, under

appeals erred to conclude that "no rational trier of fact could have found that Appellant attempted to conceal evidence of any kind."[86]  The State's third point of error is sustained.

## CONCLUSION

The court of appeals provided three independent justifications for refusing to reform the appellant's judgment of conviction to reflect a conviction for attempted tampering with evidence: 1) that the State "failed to preserve" the issue of reformation; 2) that *Bowen* "has no application to the facts of" the appellant's case; and 3) that the evidence presented at trial is "not legally sufficient to support a conviction of attempted tampering with evidence."[87] Each of these justifications fails to withstand scrutiny, and we therefore reverse the judgment of the court of appeals.  The cause is remanded to the trial court to reform the judgment to reflect a conviction for the offense of attempted tampering with evidence and to hold a punishment hearing attendant to this post-reformation conviction.

DELIVERED: APRIL 2, 2014
PUBLISH

---

the facts "apparent[]" to him—that is, under the facts as he understood them—tend to effect concealment, but that he nevertheless failed to effectuate his intent.

[86]  *Thornton*, 401 S.W.3d at 402.

[87]  *Id.* at 400-01.