

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00778-CR

Marco **TULIO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR10853
Honorable Lorina I. Rummel, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Marialyn Barnard, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed: December 5, 2018

AFFIRMED

A jury found appellant Marco Tulio guilty of two instances of aggravated sexual assault of a child and indecency with a child by contact. On appeal, Tulio contends the evidence is legally insufficient to support his conviction. We affirm the trial court's judgment.

## BACKGROUND

This matter began when Sabrina witnessed Tulio, her live-in boyfriend, caressing her eleven-year-old daughter's buttocks in the laundry room. Sabrina confronted Tulio, who denied the allegation, claiming he was only touching the child's back. After an altercation that resulted

in Tulio leaving the home, Sabrina questioned her daughter, S.P., asking whether Tulio was touching her buttocks and whether it had happened before. According to Sabrina, S.P. stated Tulio touched her buttocks and had done so "[a] lot of times…." Sabrina called police. Investigations by both law enforcement and Child Protective Services (CPS) ensued.

Upon receiving Sabrina's call, Officer Gilbert Salazar of the San Antonio Police Department was dispatched to the home. Officer Salazar later testified that upon arrival, he spoke to Sabrina and S.P. regarding the laundry room incident. S.P. told Salazar that the evening before Tulio touched her in the laundry room, he "put his thing inside her." The officer stated he understood this to mean Tulio had penetrated S.P.'s vagina. Ultimately, Officer Salazar took Sabrina and S.P. to police headquarters to be interviewed.

As part of the investigation, S.P. was examined by Betty Mercer, a sexual assault nurse examiner ("SANE"). Nurse Mercer testified S.P. told her about certain incidents involving Tulio. According to the nurse, S.P. described a particular incident in detail, telling Nurse Mercer:

> I was laying down. I went to the laundry room to get a blanket, and I played with my kitty. He came in, turned off the lights, he pulled me close, he pulled down my pants, and he sticked his thing in me. I was trying to get away from him. He let me go. I got away, and I went to go sleep with my sister and brother 'cause I was scared. He went upstairs with my mom.

Mercer asked S.P. to clarify what she meant by "his thing," and S.P. pointed to her genitals and said, "[h]is middle part." Nurse Mercer testified that her examination showed S.P. had two tears to her anus and early signs of genital warts around her hymen and urethra. According to the nurse, S.P.'s exam results were categorized as "nonspecific" as opposed to "normal," signifying the findings were consistent with penetration.

As noted above, a CPS abuse case was initiated. James Braun, a Special Investigator with CPS, was assigned to S.P.'s case. Investigator Braun contacted Tulio. At trial, the investigator testified Tulio voluntarily met with him and Special Investigator John Longoria, who assisted in

translating the interview for Tulio. According to Investigator Braun, during the interview Tulio confessed to a multitude of inappropriate sexual encounters with S.P. including: (1) touching S.P.'s chest over her clothing in the child's bedroom on several nights; (2) touching S.P.'s chest and vaginal area over the child's clothing, admitting that at least on one occasion he had an erection; and (3) inserting his finger into S.P.'s vagina while the two were in a friend's swimming pool

Investigator Longoria provided testimony that echoed that provided by Investigator Braun. He testified that after some denial, Tulio confessed to touching S.P. on her breast over her clothes. According to the investigator, Tulio claimed the touching happened approximately four times and blamed it on his drinking problem. The investigator stated that according to Tulio, Tulio once went into S.P.'s room while she was sleeping and touched her breast over her clothes. During this incident, S.P. woke up and told Tulio to stop or she would tell her mother. Tulio also admitted to engaging in the same activity in the morning before he went to work. Investigator Longoria stated Tulio also confessed to an incident that occurred approximately two weeks before his arrest, admitting that while he and S.P. were in a friend's pool, he inserted his first finger into her vagina.

The State also produced testimony from Sabrina, S.P.'s mother. She first testified to witnessing the laundry room incident in which Tulio caressed S.P.'s buttocks. She also recounted a time in which she, Tulio, and her children were at a friend's pool. Sabrina testified she thought it was strange when she saw S.P. underneath Tulio in the pool. Sabrina stated that when she walked toward the pool, S.P. quickly moved away from Tulio. She said the event made her uneasy.

S.P. also testified. She told jurors Tulio touched her legs and her buttocks. When asked how often this happened, S.P. said, "[k]ind of every day." With regard to the laundry room incident witnessed by her mother, S.P. stated, "I was sitting down with my mom. [Tulio] went to the laundry room to check the clothes. And he said there was — there was water inside the clothes — on the thing. And while I — while I was reaching into the — washer, he — he put his hand on

my butt and was rubbing it." S.P. also testified about another incident in the laundry room that happened after a trip to the swimming pool. S.P. testified that she went into the laundry room and Tulio followed her. He then turned off the lights, pulled down her pants, and then pulled down his pants. As he stood behind her, she could feel his stomach on her back. S.P. then testified that she could feel Tulio's "middle part" on her "butt."

The prosecutor asked about other sexual encounters with Tulio. When he asked S.P. if she remembered Tulio "touching [her] on [her] chest, on [her] breast," she said "yes." She also stated Tulio touched her "middle part" with his hand over and under her clothing, moving his hand as he was touching her. During cross-examination, S.P. answered affirmatively when asked if Tulio ever put his "middle part" "*in* [her] "butt." (emphasis added)

After hearing the jury charge and deliberating, the jury found Tulio guilty of two instances of aggravated sexual assault of a child and indecency with a child. Tulio elected to have the trial court determine punishment. After the punishment hearing, the trial court sentenced Tulio to forty years' confinement for each instance of aggravated sexual assault of a child and twenty years' confinement for the indecency with a child offense — all to run concurrently. Thereafter, Tulio perfected this appeal.

ANALYSIS

Tulio contends the evidence is legally insufficient to support his conviction. The State counters, arguing the evidence sufficiently established Tulio committed two instances of aggravated sexual assault of a child — by penile-anal contact and digital-vaginal penetration — as well as one instance of indecency with a child by contact by touching S.P.'s breast.

*Standard of Review*

In reviewing a legal sufficiency challenge, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *Arroyo v. State*, No. PD-0797, 2018 WL 4344410, at \*3 (Tex. Crim. App. Sept. 12, 2018) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014) (same). The *Jackson* standard provides "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Arroyo*, 2018 WL 4344410, at \*3; *see Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014). To determine whether the inferences drawn by the trier of fact are reasonable, we must consider the "combined and cumulative force of all the evidence." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). When the evidence supports conflicting inferences, we must presume the trier of fact resolved the conflicts in favor of the verdict; we defer to that determination. *Id.*

Moreover, the jury is the sole judge of credibility and weight to be attached to the testimony of witnesses. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (citing *Jackson*, 443 U.S. at 318–19). A reviewing court cannot act as a thirteenth juror and make its own assessment of the evidence. *Cary v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016). The court's role is limited to safeguarding against the rare occurrence when the factfinder does not act rationally. *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016).

### *Application*

1. *Aggravated Sexual Assault of a Child — Penile–Anal Contact*

A person commits aggravated sexual assault of a child if he intentionally or knowingly causes the anus of a child to contact his sexual organ. TEX. PENAL CODE § 22.021(a)(1)(B)(iv). Among other things, Tulio was charged with aggravated sexual assault of a child based on intentional or knowing contact between his sexual organ and S.P.'s anus. Tulio contends the evidence is insufficient to support his conviction with regard to this allegation because S.P. never

testified to any contact with her "anus." Rather, S.P. referred only to Tulio's "middle part" touching her "butt."

However, at the time Tulio was alleged to have sexually assaulted S.P., she was an eleven-year-old child. As the Texas Court of Criminal Appeals has stated "we cannot expect the child victims of violent crimes to testify with the same clarity and ability as is expected of mature and capable adults. To expect such testimonial capabilities of children would be to condone, if not encourage, the searching out of children to be the victims of crimes … in order to evade successful prosecution." *Villalon v. State*, 791 S.W. 2d, 130, 134 (Tex. Crim. App. 1990) (en banc). In *Villalon*, the child victim of an aggravated sexual assault testified the defendant put his penis where she does "number one." *Id.* The court of appeals held this evidence was insufficient to establish penetration. *Id.* The Texas Court of Criminal Appeals reversed, holding the child's testimony was sufficient to have allowed a rational trier of fact to have believed the element of penetration was established beyond a reasonable doubt. *Id.* The court chastised the court of appeals for sitting as a thirteenth juror and reweighing the evidence. *Id.*

Here, although S.P. never used the word "anus," we hold the jury could have reasonably inferred Tulio's penis came into contact with S.P.'s anus based on S.P.'s testimony. *See* TEX. PENAL CODE § 22.021(a)(1)(B)(iv); *Arroyo*, 2018 WL 4344410, at *3. During S.P.'s testimony, elicited by the State, she specifically said Tulio's "middle part" was touching her "butt." S.P.'s testimony is supported by the SANE's testimony. Nurse Mercer testified S.P. told her, "[h]e pulled down my pants and he stuck his thing in me." In addition to Mercer's testimony, her forensic exam showed two tears to S.P.'s anus. This testimony was evidence not only of contact, but penetration.

In addition, defense counsel asked S.P. whether Tulio put his "middle part *in* [S.P.'s] butt." (emphasis added). She testified he did. From this, the jury could have reasonably determined

Tulio's penis not only came into contact with S.P.'s anus, but penetrated it. *See Arroyo*, 2018 WL 4344410, at *3

Viewing all of the evidence in the light most favorable to the verdict, we hold a rational trier of fact could have reasonably found beyond a reasonable doubt that Tulio's sexual organ made contact with S.P.'s anus. *See id.* Thus, we hold the evidence is legally sufficient to support Tulio's conviction for aggravated sexual assault of a child based on penile-anal contact.

2. *Aggravated Sexual Assault of a Child — Digital–Vaginal Penetration*

A person also commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the sexual organ of a child by any means. TEX. PENAL CODE § 22.021(a)(1)(B)(I). The jury found Tulio guilty of aggravated sexual assault based on his digital penetration of S.P.'s sexual organ. Tulio contends the evidence presented at trial was insufficient to support the jury's finding because: (1) S.P. never alleged that he digitally penetrated her, and (2) testimony from the two CPS investigators is insufficient given that Tulio subsequently denied penetration.

We agree, as Tulio asserts, that S.P. never specifically testified about digital penetration of her sexual organ, and in fact, when asked if anything ever went inside her vagina, she said "no." However, S.P. testified Tulio touched her "middle part" under her clothes and when doing so, was moving his hand around. In addition, she advised she could not remember everything because she "blocked" some things out. Investigators Braun and Longoria both testified Tulio confessed to an incident at a friend's pool in which he inserted his finger into S.P.'s vagina. Additionally, Sabrina, S.P.'s mother, provided some corroboration to the investigators' statements, testifying that while she and S.P. where at the friend's pool, she saw S.P. underneath Tulio and when she approached them, S.P. quickly moved away from him.

As set out above, the jury is the sole judge of credibility of the witnesses. *Merritt*, 368 S.W.3d at 525. We must not act as a thirteenth juror in assessing the evidence, but must merely ensure the trier of fact has acted rationally. *Cary*, 507 S.W.3d at 766; *Morgan*, 501 S.W.3d at 89 Here, the jury heard the testimony from the investigators that Tulio confessed to digitally penetrating S.P.'s sexual organ. S.P. admitted she had blocked out certain events. The jury also heard Tulio had recanted the statements made to investigators. It was incumbent on the jury to resolve the conflict, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *See Arroyo*, 2018 WL 4344410, at *3.

Based on the testimony, we hold a jury could have reasonably determined beyond a reasonable doubt that Tulio digitally penetrated S.P.'s vagina. *See id.* We therefore hold the evidence is legally sufficient to support Tulio's conviction for aggravated sexual assault of a child based on digital penetration of S.P.'s sexual organ.

### 3. *Indecency with a Child by Sexual Contact*

Finally, Tulio contends the evidence is insufficient to support his conviction for indecency with a child by sexual contact. Pursuant to section 21.11 of the Texas Penal Code, a person commits an offense if, intending to arouse or gratify the sexual desire of any person, he touches, including touching through clothing, the breast of a child under the age of seventeen. TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(1).

The State alleged, and the jury found, Tulio committed indecency with a child by sexual contact by touching S.P.'s breast. Tulio argues the evidence is insufficient to support the allegation because Investigator Braun testified Tulio touched S.P.'s chest, not her breast, and "[s]imply touching the 'chest' of a child person is not a crime. The offensive contact must be with the 'breast' of a child."

We agree that Investigator Braun used the word "chest" as opposed to "breast." However, the record shows — as set out above — that when the prosecutor asked S.P. if she remembered Tulio "touching [her] on [her] chest, on [her] breast," she said "yes." Moreover, Investigator Longoria specifically testified: "[Tulio] said he put — he touched [S.P.] on — [S.P.] on her *breast and over her clothes.*" (emphasis added). He also testified that one night Tulio went to S.P.'s room, believing she was asleep. He "started feeling her *breast* through her clothes." (emphasis added). Tulio also confessed, according to Investigator Longoria that "he would get up in the morning and go to [S.P.'s] room and feel her *breast.*" (emphasis added).

In its recent *Arroyo* decision, the Court of Criminal Appeals clarified that the use of "chest" in testimony as opposed to "breast" is sufficient to establish indecency by contact *if there is additional evidence beyond the child's testimony using the word "chest."* 2018 WL 4344410, at *3. (emphasis added). In the present case, Investigator Longoria and the victim testified Tulio touched her breast. So, unlike *Arroyo*, the child answered a question affirmatively regarding the touching of her breast and an investigator testified Tulio admitted touching S.P.'s "breast." Thus, under *Arroyo*, the evidence is sufficient. *See id.*

Accordingly, we hold the trier of fact could have reasonably found beyond a reasonable doubt that Tulio touched S.P.'s breast with the intent to arouse or gratify his sexual desire. *See Arroyo*, 2018 WL 4344410, at *3. Thus, we hold the evidence is legally sufficient to support Tulio's conviction for indecency with a child by sexual contact.

**CONCLUSION**

Based on the foregoing analysis, we hold that the evidence is legally sufficient to support Tulio's conviction. Accordingly, we overrule his appellate complaints and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish