**AFFIRM; and Opinion Filed November 18, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01108-CR

**ROBERT LEE MENYWEATHER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F-1255747-Y**

## OPINION

Before Justices FitzGerald, Fillmore, and Stoddart
Opinion by Justice Fillmore

A jury convicted Robert Lee Menyweather of compelling prostitution of a child under the age of eighteen, and assessed punishment of twenty-seven years' imprisonment and a $10,000 fine. In four points of error, Menyweather asserts the evidence is insufficient to support the conviction and the trial court erred by submitting a charge to the jury in the guilt phase that failed to limit the definition of "knowingly" to the applicable conduct element and included a definition of reasonable doubt and by submitting a charge to the jury during the punishment phase that informed the jury about good conduct time. We affirm the trial court's judgment.

## Background

M.D. lived with her mother, her mother's husband, and four siblings.[1]  M.D.'s mother testified she did "her best" to provide for M.D. and that M.D. had a comfortable place to live, food, and a safe environment.  She attempted to keep M.D. in school and to discipline M.D.  However, in 2011, M.D. began having problems in school and began running away from home.  M.D.'s mother thought M.D. ran away from home because she wanted "to do what she want to do."  In early 2012, when she was fifteen years old, M.D. ran away from home.[2]

Aquesha Hutchinson, who was twenty-three years old at the time of trial, testified that she had known Menyweather since she was nineteen years old.  Hutchinson lost contact with Menyweather and, at some point, became a prostitute.  Approximately a year later, Hutchinson saw Menyweather again and they agreed to work together.  Menyweather's role was to provide protection in case Hutchinson got "into a jam" with a customer.  Hutchinson would give the money she earned to Menyweather, and he would use it to pay for her and her children's needs, such as food and clothes.  In March 2012, Octavia Williams and M.D. began working for Menyweather as prostitutes.  Hutchinson and Williams testified that both M.D. and her mother told them M.D. was nineteen years old.  Hutchinson did not believe that she, Menyweather, or Williams compelled or forced M.D. to engage in prostitution.

Williams testified that in March 2012, she was eighteen years old and was having a difficult time getting a job.  A friend referred her to Menyweather as someone who could "help [her] out a little bit."  Williams knew her friend was referring to having sex for money.  Williams met Menyweather, who also went by "Stash," and Hutchinson at a hotel and agreed to become a prostitute.  Williams understood that Menyweather would be her protector and she would give

---

[1] The record is not clear whether M.D.'s mother's husband was also M.D.'s father.

[2] M.D. ran away again approximately two months before trial, and her mother believed she was in California.  M.D. was not available to testify at trial.

–2–

the money she earned to him. Williams testified it was her decision to engage in prostitution. Neither Menyweather nor Hutchinson forced her to engage in prostitution, and she could have stopped at any time.

According to Williams, Hutchinson taught her the "rules" of prostitution. Either Menyweather or Hutchinson posted an advertisement for Williams on the internet that included pictures of her in her bra and underwear posing in different positions. Menyweather took some of the pictures and, using her smart phone, Williams took other pictures. Williams's customers would contact her on the telephone number provided in the advertisement and meet her at a hotel room that was rented in either Menyweather's or Hutchinson's name.

The first night, Williams had one customer who came to have sex with her. Williams received $40 for having sex with the person and took the money home with her. Williams returned several days later because she found the work to be "easy money." When she returned, M.D. was with Menyweather and Hutchinson. According to Williams, Menyweather and the three women traveled around the Dallas area in Menyweather's car to different hotels. Once they were at a hotel, they would post advertisements on the internet and arrange to meet customers at the hotel. Over the next few weeks, Williams saw M.D. having sexual contact with other people. Further, they sometimes advertised for customers together, and Williams recalled two instances in which she and M.D. were hired by the same customer. Any money that Williams or M.D. earned by having sex with their customers was given to either Hutchinson or Menyweather. If the money was given to Hutchinson, she, in turn, gave it to Menyweather.

According to Hutchinson, Menyweather received the money Williams and M.D. earned from engaging in prostitution. Menyweather used the money he received from Williams and M.D. to provide for their needs. Hutchinson saw Menyweather buy Williams clothes. He also bought M.D. a cellphone, clothes, and other things. According to Williams, Menyweather used

–3–

the money to pay for expenses, such as food, hotel rooms, clothes, and transportation. He also paid for her to have her hair done.

Hutchinson testified the women had to speak to Menyweather in a certain way and be respectful to him. If they failed to do so, there would be consequences such as verbal or physical abuse. Williams testified she gave the money she earned to Menyweather because she had to and because she did not want him to become angry with her. Williams saw Menyweather hit or slap both Hutchison and M.D. when he was angry with them. Menyweather also slapped her one time. Williams testified that, although the slap did not hurt her, Menyweather was serious and it was not a "playful" slap.

According to Hutchinson, on March 27, 2012, she, Menyweather, and M.D. were sitting in Menyweather's car in the parking lot of a hotel. Dallas Police Officer Nick Earwood testified he was on patrol when he saw three people sitting in a car. Because the hotel had requested the Dallas police to "keep an eye out" for people loitering on the property, Earwood pulled over to investigate. After Menyweather gave Earwood permission to search the car, Earwood found a notebook containing the personal information of a number of people, including names, addresses, Social Security numbers, phone numbers, and dates of birth. Earwood testified he arrested Menyweather for being in possession of personal information relating to other individuals.

Williams and Hutchinson testified that, following Menyweather's arrest, they, M.D., and Menyweather's cousin went to Shreveport, Louisiana to raise money for Menyweather's bond and for an attorney. According to Williams, Menyweather did not know the group was going to Louisiana. While in Louisiana, M.D. and Williams were arrested for prostitution and possession of marijuana. M.D. was also charged with possession of drug paraphernalia.

After her arrest in Louisiana, M.D. returned home. M.D.'s mother noticed that M.D. had the word "Stash" surrounded by stars and a dollar sign tattooed on her right thigh. M.D. did not have the tattoo before she ran away. M.D. was subsequently interviewed by Detective Michael McMurray, who was assigned to the Dallas Police Department's High Risk Victim Unit. McMurray testified that M.D. appeared to come from a fairly stable home and her parents provided her with basically everything she needed. It was also his understanding that each time M.D. ran away from home, she was able to return home when she wanted to do so. From the interview, McMurray learned the names "Stash," "Tae," and "Que."[3] McMurray began investigating a human trafficking and compelling prostitution of a child case. Based on telephone numbers that came up during his investigation, hotel rooms that M.D. identified, and an arrest in Louisiana, McMurray was able to develop Menyweather, Hutchinson, and Williams as suspects. McMurray filed charges against both Hutchinson and Williams for compelling prostitution of a child under the age of eighteen and trafficking persons under the age of eighteen. Although at the time of trial neither woman had been promised anything by the prosecutor if they would testify, both women testified they hoped the charges against them would be dismissed following their testimony.

The jury also heard testimony from Byron Fassett, a sergeant in the Dallas Police Department's Child Exploitation Squad. Fassett testified he had been a police officer for thirty-three years and had specialized in cases involving child sexual abuse and exploitation for twenty years. According to Fassett, a prostitution enterprise has a hierarchy from a pimp as the head of the enterprise to the "bottom girl" to the worker. The pimp is the enforcer and will make the final decisions. The "bottom girl" has the most power behind the pimp. Her role is "to be a

---

[3] The record reflects that "Tae" and "Que" were Williams and Hutchinson, respectively.

mother, to be supportive, to be a recruiter, to be an educator, to collect the money." The "bottom girl" is also responsible for keeping the prostitution enterprise operating if the pimp is in jail.

In Fassett's experience, many of the young girls who are involved in prostitution are traumatized or victimized people. They are generally runaways and have nowhere to live. A pimp or "bottom girl" will meet the girl's physiological needs of safety, food, and shelter. They will then seduce the girl with love, affection, and attention. They will control the girl emotionally and financially and then threaten the girl by withholding affection and attention. In Fassett's opinion, a tattoo of the pimp's name on a girl's body is a control technique, and the fact the girl allowed the pimp's name to be tattooed on her body is an indication of the girl's psychological state.

The jury found Menyweather guilty of compelling prostitution of a child under the age of eighteen, sentenced him to twenty-seven years' imprisonment, and assessed a $10,000 fine.

### Sufficiency of the Evidence

In his first point of error, Menyweather asserts the evidence is insufficient to prove he caused M.D. to commit prostitution. Menyweather specifically argues the evidence did not establish he was a "but for" cause of M.D. engaging in prostitution because M.D. had a home to go to and did not fit the profile, as described by Fassett, of the typical child who was compelled to engage in prostitution; M.D. chose to engage in prostitution and would have done so even without his conduct; and Hutchinson's and Williams's testimony was not credible because they hoped the charges against them would be dismissed following their testimony.

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Matlock v. State,* 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable

–6–

doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). As the fact finder, the jury is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of the evidence."). We defer to the jury's determinations of credibility, and may not substitute our judgment for that of the jury. *Jackson*, 443 U.S. at 319; *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (in conducting legal sufficiency analysis, appellate court "may not re-weigh the evidence and substitute our judgment for that of the jury"). When there is conflicting evidence, we must presume the factfinder resolved the conflict in favor of the verdict, and defer to that resolution. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise*, 364 S.W.3d at 903.

A person commits the offense of compelling prostitution if he knowingly causes, by any means, a child younger than eighteen years of age to commit prostitution, regardless of whether he knew the child's age at the time of the offense. TEX. PENAL CODE ANN. § 43.05(a)(2) (West Supp. 2014). Prostitution is offering to engage, agreeing to engage, or engaging in sexual conduct for a fee, or soliciting another in a public place to engage in sexual conduct for a fee. *Id.* § 43.02(a)(1) (West Supp. 2014). "The actual commission of the offense of prostitution is not a

prerequisite to the commission of the offense of compelling prostitution." *Davis v. State*, 635 S.W.2d 737, 739 (Tex. Crim. App. 1982).[4] Rather "'one who *provides opportunity* for a willing minor to engage in prostitution and *influences, persuades* or *prevails upon her to do so* has . . . caused the prostitution . . . .'" *Waggoner v. State*, 897 S.W.2d 510, 512 (Tex. App.—Austin 1995, no pet) (quoting *State v. Wood*, 579 P.2d 294, 296 (Or. Ct. App. 1978)).

Menyweather first contends the definition of causation in *Waggoner* improperly considers factors not included in the statutory language and the "but for" test set out in section 6.04(a) of the penal code is the only definition of causation that should be used in determining whether the evidence is sufficient to support the conviction.[5] However, a person is guilty of compelling prostitution of a child under the age of eighteen if he knowingly caused the child to commit prostitution "regardless of the means used." *Tubbs v. State*, 670 S.W.2d 407, 408 (Tex. App.—Dallas 1984, no pet.); *see also* TEX. PENAL CODE ANN. § 43.05(a)(2). The "means used" could include providing an opportunity for a child, willing or unwilling, to engage in prostitution while influencing, persuading, or prevailing upon the child to do so.[6] Accordingly, we cannot

---

[4] *See also Williams v. State*, Nos. 05-11-01729-CR, 05-12-00007-CR, 2013 WL 3974045, at *5 (Tex. App.—Dallas Aug. 2, 2013, pet. ref'd) (mem. op., not designated for publication).

[5] Section 6.04(a) of the penal code provides:

> A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

TEX. PENAL CODE ANN. § 6.04(a) (West 2011).

[6] *See Baker v. State*, Nos. 05-96-00705-CR, 05-96-00706-CR, 1998 WL 70631, at *2–3 (Tex. App.—Dallas Feb. 20, 1998, pet. ref'd) (not designated for publication) in which the appellant, who had been convicted of compelling prostitution of a child, asserted the trial court erred by not charging the jury on "concurrent causation" based on evidence the child was a runaway, a drug user, and asked the defendant to allow her to engage in prostitution. This Court noted there was no evidence the child would have begun to work as a prostitute but for her relationship with the appellant and that the child testified the appellant suggested she work as a prostitute, bought her provocative clothing, drove her to a specific place he had identified for her to work as a prostitute, told her how much to charge customers, and collected money from her that she had earned "doing tricks." We concluded the appellant was not entitled to a charge on concurrent causation because there was "no evidence suggesting that [the appellant's] conduct alone was clearly insufficient to cause the result of [the child] prostituting herself." *Id.* ad *3; *see also Williams*, 2013 WL 3974045, at *6 (evidence was sufficient to support convictions for compelling prostitution of a child because, although children testified they chose to prostitute, they also testified they had never prostituted before and appellant taught them "basics" of how to prostitute, provided them with means to prostitute, bought them things, and collected all money they earned from prostitution); *Cotton v. State*, No. 05-95-01070-CR, 1997 WL 331008, at *3 (Tex. App.—Dallas June 18, 1997, pet. ref'd) (not designated for publication) (means to compel child to engage in prostitution can include persuasion).

conclude *Waggoner* is inconsistent with the statutory definition set out in section 6.04(a) of the penal code.

Menyweather next argues the evidence is insufficient to support the conviction because only Hutchinson and Williams testified about his conduct with M.D. and their testimony was unreliable because they hoped the charges against them would be dismissed following their testimony against Menyweather.[7]  However, this fact was for the jury to consider in assessing Hutchison's and Williams's credibility and determining the weight to be given their testimony. *Jackson*, 443 U.S. at 319; *Thornton*, 425 S.W.3d at 303.  We afford almost complete deference to the jury's weight and credibility determinations and are not permitted to substitute our judgment for that of the jury.  *See Jackson*, 443 U.S. at 319; *Thornton*, 425 S.W.3d at 303.

Menyweather finally asserts the evidence is insufficient to support the conviction because M.D. did not fit the profile, as described by Fassett, of a typical child who is compelled to engage in prostitution.  Menyweather specifically argues that M.D. had a stable home to return to, was allowed to return home whenever she ran away, and ran away so that she could do what she wanted to do, including engaging in prostitution.  However, there is no evidence in the record that M.D. engaged in prostitution prior to March 2012.  Both Hutchinson and Williams testified that, in March 2012, they and M.D. engaged in prostitution for Menyweather. Menyweather or Hutchinson posted advertisements on the internet so that customers could contact M.D.  Menyweather provided transportation to various locations at which M.D. engaged in prostitution.  M.D. gave the money she earned to Menyweather or to Hutchinson who, in turn, gave it to Menyweather.  Menyweather used the money to pay for the hotel rooms in which M.D.

---

[7] Menyweather also argues that Hutchinson and Williams had immunity under section 43.06(b) of the penal code and, therefore, were mistaken in their belief that the charges against them might not be dismissed.  Section 43.06(b) provides that:

> A party to an offense under this subchapter may not be prosecuted for any offense about which he is required to furnish evidence or testify, and the evidence and testimony may not be used against the party in any adjudicatory proceeding except a prosecution for aggravated perjury.

TEX. PENAL CODE ANN. § 43.06(b) (West 2011).  The record reflects that both Hutchinson and Williams voluntarily testified.

engaged in prostitution as well as for food, clothes, a cellphone, and other things for M.D. If M.D. did not treat Menyweather in the appropriate way, he could verbally or physically abuse her, and Williams saw Menyweather slap M.D. Finally, during the time she was a runaway in 2012, M.D. acquired a tattoo of Menyweather's nickname on her thigh which, according to Fassett, was an indication of the amount of control Menyweather exerted over M.D.

Absent Menyweather's conduct, M.D. would not have engaged in prostitution on the occasions testified to by Hutchinson and Williams.[8] Viewing the evidence in the light most favorable to the verdict, we conclude a rational jury could find Menyweather compelled M.D., who was younger than eighteen years of age, to engage in prostitution. *See Waggoner*, 897 S.W.2d at 512 (evidence that defendant provided contact and meeting, gave child condom and cellular telephone, drove child to location, provided code to security guard to allow child to enter premises, and persuaded child to go through with encounter was sufficient to support conviction for compelling child to engage in prostitution).[9] We resolve Menyweather's first point of error against him.

### Jury Charge Error

In his second through fourth points of error, Menyweather contends the trial court erred by submitting a jury charge in the guilt phase that failed to limit the definition of "knowingly" to the applicable conduct element and included a definition of reasonable doubt and by submitting a

---

[8] *See Smith v. State*, No. 05-09-01331-CR, 2011 WL 2090256, at *4 (Tex. App.—Dallas May 27, 2011, not pet.) (mem. op., not designated for publication) ("Furthermore, [the child's] willingness to prostitute herself before and after her involvement with appellant does not mean he did not cause [the child] 'by any means' to commit prostitution. Appellant provided [the child] with the opportunity to engage in prostitution and influenced or persuaded her to do so.").

[9] *See also Puckett v. State*, Nos. 05-04-01472-CR, 05-04-01473-CR, 2005 WL 2436426, at *2–3 (Tex. App.—Dallas Oct. 4, 2005, pet. ref'd) (not designated for publication) (evidence that defendant told child that she had to have sex with "johns" to stay at hotel, provided child with cell phone and condoms, and required child to give him all money she earned from prostitution activities sufficient to support conviction for compelling prostitution of child under age of eighteen); *Cotton*, 1997 WL 331008, at *4 (evidence defendant provided child with food, clothing, and lodging in exchange for money she earned from engaging in prostitution, sent child to certain locations where men asked her to have sex for money, and told child how to prostitute herself was sufficient to support convicting for compelling prostitution of a child); *Agyin v. State*, Nos. 04-12-00749-CR, 04-12-00750-CR, 04-12-00751-CR, 2013 WL 5864483, at *2 (Tex. App.—San Antonio Oct. 30, 2013, pet. ref'd) (mem. op., not designated for publication) (evidence that defendant transported child to several locations to find men for her to have sex with, appropriated money child received for performing sex acts, and planned to "protect" child "while she did what she did" was sufficient to support essential elements of compelling prostitution).

jury charge in the punishment phase that instructed the jury about good conduct time when he was not eligible to receive it. Menyweather failed to make any of these objections in the trial court.

### Standard of Review

Our first duty in analyzing a jury-charge issue is to decide whether error exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error exists, we must determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When, as in this case, the error was not objected to, the error must be "fundamental" and requires reversal "only if it was so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex .Crim. App. 1985) (op. on reh'g)). Egregious harm exists when the record shows that a defendant has suffered actual, rather than merely theoretical, harm from jury-charge error. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 174. Egregious harm consists of error affecting the very basis of the case, depriving the defendant of a valuable right, or vitally affecting a defensive theory. *Nava*, 415 S.W.3d at 298 (citing *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). We assess harm in light of "the entire jury charge, the state of the evidence (including the contested issues and the weight of probative evidence), the arguments of counsel, and any other relevant information revealed by the record as a whole." *Nava*, 415 S.W.3d at 298.

### Definition of Knowledge

Menyweather asserts the trial court erred by failing to limit the definition of "knowingly" in the guilt-phase jury charge to the applicable conduct element. There are three "conduct elements" that can be involved in an offense: (1) the nature of the conduct, (2) the result of the

conduct, and (3) the circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03 (West 2011); *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim App. 1989). An offense may contain one or more of these "conduct elements," which alone or in combination form the overall behavior that the legislature intended to criminalize, and it is those "conduct elements" to which a culpable mental state may apply. *McQueen*, 781 S.W.2d at 603. A trial court errs by failing to limit the definitions of the culpable mental states to the conduct element or elements of the offense to which they apply. *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994); *Ash v. State*, 930 S.W.2d 192, 194–95 (Tex. App.—Dallas 1996, no pet.).

Here, the trial court instructed the jury that a person commits the offense of compelling prostitution if, "he knowingly causes by any means a person younger than 18 years to commit prostitution, regardless of whether the actor knows the age of the child at the time the actor commits the offense." The trial further instructed the jury that:

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to the circumstances surrounding conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge[,] with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Menyweather argues the offense of compelling prostitution is a result-of-conduct offense and that the trial court erred because it did not limit the definition of "knowingly" to the result of his conduct. He argues the "contested issue in this case is the element of cause," and the jury was required to determine whether he knowingly engaged in conduct reasonably certain to cause M.D. to commit prostitution. He claims he was egregiously harmed by the complained-about instruction because it improperly focused the jury on whether he knowingly engaged in conduct which created circumstances which gave M.D. the opportunity to commit prostitution. The State

–12–

responds that even assuming there was error in the charge, any error was harmless. We agree with the State.

We must begin the harm analysis by reviewing the jury charge as a whole. The jury was instructed that a person commits the offense of compelling prostitution if he "knowingly causes" by any means a person younger than eighteen years of age to commit prostitution. In the application paragraph of the charge, the jury was authorized to find Menyweather guilty of the offense only if it found beyond a reasonable doubt that he "knowingly cause[d] [M.D.], a person younger than 18 years of age, to commit prostitution." Because "knowingly" was in front of the word "cause" in both the instruction and application paragraphs, a juror could not mistake the requirement that "knowingly applied directly to causing another to commit prostitution." *Hill v. State*, 265 S.W.3d 539, 544 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Further, the charge not only correctly instructed the jury on the substantive law of the case and informed the jury of what the State was required to prove, but it also correctly addressed the presumption of innocence and the State's burden of proof. *See Bazanes v. State*, 310 S.W.3d 32, 37 (Tex App.— Fort Worth 2010, pet. ref'd). Accordingly, the jury charge as a whole appears to have cured any harm. *See Hill*, 265 S.W.3d at 544.[10]

We next consider the state of the evidence, including the contested issues and the weight of probative evidence. There was no dispute in this case that M.D. was younger than eighteen years of age and was engaged in prostitution. Rather, Menyweather contested whether he compelled M.D.'s conduct. In doing so, Menyweather relied on Hutchinson's and Williams's testimony that they chose to engage in prostitution and could have quit working for Menyweather at any time and that M.D. ran away from home to do what she wanted to do, including engaging in prostitution, and would have engaged in prostitution even without his

---

[10] *See also Williams*, 2013 WL 3974045, at *7.

conduct. On the other hand, the State presented evidence that Menyweather knew the result of his conduct in posting advertisements, driving M.D. to hotels, and paying for hotel rooms was that M.D. engaged in prostitution and that Menyweather received all the proceeds from M.D. engaging in prostitution. The jury was, therefore, required to determine whether Menyweather knew that the result of his conduct was prostitution. *See id.*[11]

Third, we review the arguments of counsel. In her argument, the prosecutor conceded that M.D. was not a model child and had agreed to engage in prostitution. The prosecutor argued, however, that Menyweather caused M.D. to engage in prostitution by providing her protection, transportation, food, clothes, and a cellphone. Further, Menyweather took the money that M.D. earned from engaging in prostitution and was physically abusive to her. The prosecutor argued these actions by Menyweather "caused by any means [M.D.] to prostitute." Menyweather's counsel responded that both Hutchinson and Williams were willing to engage in prostitution, were not forced to engage in prostitution, and M.D. had not testified about whether she was compelled to engage in prostitution. His counsel continued by asserting that M.D. had everything she needed at home and ran away because "she wanted to do what she wanted to do." Menyweather's counsel also attacked Hutchinson's and Williams's credibility and emphasized that their hope the charges against them would be dismissed gave them a motive to "tweak" their testimony. Both of these arguments urged the jury to decide whether Menyweather knowingly caused the resulting prostitution. Accordingly, Menyweather was not harmed by the arguments of counsel. *See id.*[12]

---

[11] *See also Williams*, 2013 WL 3974045, at *7.

[12] *See also Williams*, 2013 WL 3974045, at *7.

Finally, we must review any other relevant information, including the record as a whole. We find nothing in the record to show that Menyweather was harmed by the alleged error in the jury charge.

We conclude, based on the entire record, that, even if there was error in the definition of "knowingly" included in the jury charge, Menyweather was not egregiously harmed. We resolve Menyweather's second point of error against him.

## *Definition of Reasonable Doubt*

In his third point of error, Menyweather asserts the trial court erred by submitting a charge to the jury during the guilt phase that contained a definition of reasonable doubt. Menyweather specifically complains about the instruction in the jury charge that, "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." The court of criminal appeals has concluded a trial court does not abuse its discretion by giving the instruction. *Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010) (citing *Woods v. State*, 152 S.W.3d 105, 114–15 (Tex. Crim. App. 2004)); *see also O'Canas v. State*, 140 S.W.3d 695, 702 (Tex. App.—Dallas 2003, pet. ref'd) (complained-about instruction "simply states the legally correct proposition that the prosecution's burden is to establish proof beyond a reasonable doubt and not all possible doubt" and does not define "reasonable doubt"). Accordingly, we resolve Menyweather's third point of error against him.

## *Instruction on Good Conduct Time*

In his fourth point of error, Menyweather complains the trial court erred by instructing the jury in the punishment-phase charge about good conduct time. The trial court's instruction, which tracked article 37.03, section 4(a) of the code of criminal procedure, reads, in part, as follows: "Under the law applicable in this case, the defendant, if sentenced to a term of

–15–

imprisonment, may earn time off the period of incarceration imposed through the award of good-conduct time." *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (West Supp. 2013). Menyweather does not dispute the instruction tracked the statutory language, but argues that, because he was statutorily ineligible for good conduct time, *see* TEX. GOV'T CODE ANN. § 508.149(a)(18) (West Supp. 2014), the instruction was an incorrect statement of the law and misled the jury.

The court of criminal appeals rejected Menyweather's argument in *Luquis v. State*, 72 S.W.3d 355 (Tex. Crim. App. 2002). Although the court acknowledged a defendant could claim the instruction might be misleading and inapplicable to him, it construed article 37.07, section (4) to be an absolute command that the good conduct time instruction be given to the jury. *Id.* at 363; *see also Sanders v. State*, No. 04-13-00487-CR, 2014 WL 4257907, at *3 (Tex. App.—San Antonio Aug. 29, 2014, no pet. h.). We have similarly overruled this same argument based on *Luquis. See Anderson v. State*, No. 05-13-00253-CR, 2013 WL 6870013, at *4 (Tex. App.—Dallas Dec. 31, 2013, no pet.) (mem. op., not designated for publication); *Coppola v. State*, No. 05-10-00704-CR, 2012 WL 29318, at *5 (Tex. App.—Dallas Jan. 6, 2012, no pet) (not designated for publication). Accordingly, the trial court did not err by including the good conduct time instruction in the jury charge. We resolve Menyweather's fourth point of error against.

We affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
Do Not Publish                    JUSTICE
TEX. R. APP. P. 47

131108F.U05

–16–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROBERT LEE MENYWEATHER,
Appellant

No. 05-13-01108-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 7, Dallas County, Texas,
Trial Court Cause No. F-1255747-Y.
Opinion delivered by Justice Fillmore,
Justices FitzGerald and Stoddart
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 18th day of November, 2014.