**AFFIRM; and Opinion Filed January 21, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01194-CR

### KEITH WAYNE EDWARDS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F12-16761-K**

## MEMORANDUM OPINION

Before Chief Justice Wright, Justice Francis, and Justice Fillmore
Opinion by Justice Fillmore

A jury convicted Keith Wayne Edwards of manslaughter and assessed punishment of eleven years' imprisonment. Edwards asserts the evidence is insufficient to support the conviction because no rational juror could have found against him on his self-defense claim. We affirm the trial court's judgment.

## Background

At approximately 6:30 p.m. on October 24, 2012, Jesus Villanueva was on a DART "green line" train traveling from downtown Dallas toward the Buckner Station. According to Villanueva, two men on the train, Samuel Anderson and Frank Ramirez, were drunk and "being loud."[1] Edwards sat down by the two men but, at some point, moved and sat down by

---

[1] A sample of Anderson's blood taken at the hospital showed a blood alcohol content of .241.

Villanueva.  Two teenaged girls got on the train, and Ramirez "started messing" with the girls by talking to them and "tapping" them.  Anderson attempted to make Ramirez stop bothering the girls.

Villanueva testified that Edwards leaned over and said, "watch this" to Villanueva and another passenger.  Edwards then moved to a seat by Anderson and Ramirez.  Villanueva thought Edwards, who was a "pretty big guy," was going to punch one of the men and get off the train.  Using his cellphone, Villanueva started recording the activities on the train because he thought something funny was going to happen.  The recording made by Villanueva was played for the jury.

The recording shows Edwards sitting behind Anderson and across the aisle, but one seat back, from Ramirez.  Anderson and Ramirez were speaking to each other, but neither man was speaking to Edwards.  Edwards then turned toward the window of the train.  Villanueva testified that Edwards turned, "like nobody would see him," and started "digging" in his bag.  It looked to Villanueva as if Edwards was taking something out of his bag.  However, Villanueva did not actually see Edwards remove anything from his bag because of an obstruction on the train and the recording does not show Edwards removing anything from his bag.

As the train approached the Lake June Station, Edwards reached out his hand toward Ramirez and started talking to Ramirez.  Villanueva could not hear what Edwards said to Ramirez, and the conversation is not audible on the recording.  Anderson had his back to, and was not paying attention to, Edwards.  At this point, the recording was interrupted when Villanueva received a text.

According to Villanueva, as the train pulled into the Lake June Station, Edwards stood up and started "going back and forth" with Ramirez.  The recording shows Edwards and Ramirez talking heatedly to each other, and Edwards then reaching into the pocket of his pants.

–2–

Villanueva testified, and the recording shows, that Edwards swung his bag at Ramirez. Anderson stood up between the two men and prevented Edwards from hitting Ramirez with the bag. Anderson then chased Edwards out of the door of the train, throwing a punch that did not appear to contact Edwards. Villanueva testified Anderson and Edwards continued to "go back and forth," with Edwards standing outside the train. Anderson was telling Edwards to "back off" and kicking at Edwards. The recording shows Anderson, wearing an orange backpack and with a cigarette in one hand, kicking and throwing punches out of the door of the train. Villanueva testified it appeared Edwards pulled Anderson off the train. Villanueva looked out of the train and saw Anderson laying on the ground, bleeding from his neck. According to Villanueva, the first act of aggression between the men was Edwards's swinging his bag at Ramirez. In Villanueva's opinion, although Anderson was drunk, he did not hurt anybody and nothing happened that justified him being killed

Evelyn Lazo exited the train at the Lake June Station and saw a man get off the train. The man looked a little aggressive, "like he was almost ready to fight." Lazo saw the man swing his arm up, and she thought he was trying to punch someone inside the train in the face. She then saw blood spew out of Anderson's neck. Anderson fell on the ground, and the other man ran off. A recording from the Lake June Station platform was played for the jury. The platform recording shows Edwards exiting the train, but immediately turning around. Edwards stepped in and out of the door of the train and appeared to be yelling. Edwards then swung his arm, and Anderson fell out of the train. A pool of blood appeared around Anderson. Edwards immediately ran toward the back of the train.

Edwards testified that on October 24, 2012, he spent the day looking for a job. He boarded the "green line" train at the Martin Luther King Station and intended to ride the train to the Buckner Station. When he boarded the train, he noticed a "commotion." The train was

–3–

crowded and he sat down without realizing the person next to him, Ramirez, was creating the problem. According to Edwards, Ramirez and Anderson were drinking out of a bottle, "talking bad," and calling people names, such as the "n-word" and the "b-word." After a "stop or so," Edwards decided to change seats. When Edwards decided to move seats, neither Anderson nor Ramirez had said anything to him. Edwards sat down across the aisle from Villanueva. According to Edwards, the recording made by Villanueva did not capture everything that happened on the train.

At some point, Edwards decided to check whether he had left something in his first seat. When he did, Ramirez's foot kicked him and Ramirez said something. While evidently gesturing for the jury, Edwards stated he took his bag and "did that" after Ramirez's foot kicked him.[2] Anderson opened his orange backpack, showed Edwards a small caliber pistol, and said "I'll shoot your black ass." Edwards then returned to the seat by Villanueva. According to Edwards, he said, "what's this" to Villanueva because he did not know what he "done got into."

As the train approached the Lake June Station, Edwards moved back to a seat by Ramirez and Anderson. Edwards admitted he then initiated contact with Ramirez, probably because of something Ramirez said. Edwards does not remember what he said to Ramirez. Edwards swung his bag at Ramirez, and immediately got off the train at the Lake June Station. Edwards realized he had left his chicken dinner behind and attempted to re-board the train. Anderson started kicking and swinging at Edwards, preventing him from getting back on the train. According to Edwards, Anderson had given his backpack to Ramirez. Edwards saw Anderson reaching for the backpack and thought Anderson was going to get the gun. Edwards took a piece of broken glass that he had found on the train from his pocket and jabbed Anderson with it. Edwards knew he made contact with Anderson.

---

[2] The record does not reflect what movement Edwards indicated he made with his bag during this exchange with Ramirez.

–4–

Edwards admitted his conduct was reckless, but denied he intended to harm or kill Anderson. Edwards thought his action was reasonable and necessary because he was in fear for his life. However, Edwards admitted he was provoked by Anderson calling him names and kicking him and that maybe he jabbed at Anderson because he was angry. Edwards ran away because he believed Ramirez had the backpack, did not know what Ramirez intended to do, and was in fear for his life. When Edwards was interviewed by the police following his apprehension, he did not tell the police that Anderson had a gun.

Anderson's left external and internal carotid arteries were severed by Edwards's jab with the piece of broken glass, and he died following surgery. Edwards was indicted for murder. The jury convicted Edwards of the lesser included offense of manslaughter and sentenced him to eleven years' imprisonment.

### Analysis

Edwards asserts the evidence is insufficient to support the conviction because no rational juror could have found against him on his claim of self-defense. When an appellant urges a sufficiency challenge on the basis of his claim of self-defense, we do not look to whether the State presented evidence that refuted a theory of self-defense. Instead, we determine, after viewing all the evidence in the light most favorable to the verdict, whether any rational fact finder (1) would have found the essential elements of the offense beyond a reasonable doubt, and (2) would have found against the appellant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury, as the fact finder, is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of the evidence."). We defer to the

jury's determinations of credibility, and may not substitute our judgment for that of the jury. *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *Isassi v. State*, 330 SW.3d 633, 638 (Tex. Crim. App. 2010). Our duty is to ensure the evidence presented supports the jury's verdict and the State has presented legally sufficient evidence establishing the offense. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

The initial burden to produce evidence supporting self-defense rests with the defendant. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton*, 804 S.W.2d at 913. Once the defendant produces some evidence, the State bears the ultimate burden of persuasion to disprove the raised defense. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913–14. This burden of persuasion does not require that the State produce evidence refuting self-defense, but it does require that the State prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913. The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject any defensive evidence on the issue. *Saxton*, 804 S.W.2d at 913–14. If the jury finds the defendant guilty, then it implicitly finds against the defensive theory. *Id.* at 914.

A person commits manslaughter if he recklessly causes the death of another. TEX. PENAL CODE ANN. § 19.04(a) (West 2011). As relevant to this case, a person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

Edwards admitted he was involved in an altercation with Ramirez and Anderson on the train and that, while attempting to re-board the train to retrieve his chicken dinner, he jabbed

Anderson with a piece of broken glass. The wound Edwards inflicted caused Anderson's death. Edwards admitted his conduct was reckless, but denied he intended to kill Anderson. Viewing the evidence in the light most favorable to the verdict, the jury could have rationally concluded beyond a reasonable doubt that Edwards was aware of the risk that a piece of broken glass used to inflict injury could cause death, and Edwards consciously disregarded that substantial and unjustifiable risk when, during the heat of an argument, he jabbed at Anderson with the piece of broken glass. We conclude a rational jury could have found all essential elements of the offense of manslaughter beyond a reasonable doubt.

We next turn to whether a rational juror could have rejected Edwards's claim he acted in self-defense. It is a defense under the penal code that the conduct at issue was justified. TEX. PENAL CODE ANN. § 9.02 (West 2011). A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. *Id.* § 9.31(a). A person is justified in using deadly force against another if the actor would be justified in using force against another under section 9.31 and when and to the degree the actor reasonably believes that deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a).

Edwards testified Anderson had a pistol in his backpack and said he would shoot Edwards. According to Edwards, when he was trying to re-board the train to retrieve his chicken dinner, Anderson was kicking him and calling him names. Edwards testified that Anderson had given the backpack to Ramirez, and Edwards saw Anderson reach for the backpack. Edwards thought Anderson was going to shoot him and jabbed Anderson with the piece of broken glass. Although Edwards testified he did so because he was in fear for his life, he also admitted he was

angry because Anderson was kicking him and calling him names. Further, following his apprehension, Edwards did not tell the police that Anderson had a gun.

Villanueva testified the first act of aggression between Edwards, on the one hand, and Ramirez and Anderson, on the other, was Edwards swinging his bag at Ramirez. The recording made by Villanueva shows Edwards sitting by Ramirez and Anderson. Neither man was talking to or paying any attention to Edwards. Edwards then reached out toward Ramirez and said something. Ramirez and Edwards got into a heated exchange. Edwards reached into his pocket and then swung his bag at Ramirez. Anderson prevented Edwards from hitting Ramirez with the bag and threw a punch as Edwards left the train. Wearing an orange backpack and holding a cigarette in one hand, Anderson continued to throw kicks and punches out of the door of the train. The recording from the train station showed Edwards exiting the train and immediately turning around. Edwards attempted to re-board the train and then jabbed his arm into the door of the train. Anderson immediately fell out of the train onto the platform and a pool of blood appeared around him.

The jury was presented with conflicting evidence about the events leading up to Anderson being stabbed with the piece of broken glass. The jury, as the sole judge of the credibility of witnesses and the weight to be given to their testimony, was free to disbelieve Edwards's version of events, including his testimony that Anderson had a gun, threatened to shoot him, and was reaching for the gun when Edwards jabbed him with the piece of broken glass. *See Wise*, 364 S.W.3d at 903. After viewing all the evidence in the light most favorable to the verdict, we conclude a rational jury could have found against Edwards on the self-defense issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914.

We have determined a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, and could have found against Edwards on the self-defense

issue beyond a reasonable doubt. *See id.* Accordingly, we conclude the evidence supporting the jury's verdict is sufficient. We resolve Edwards's sole issue against him and affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
Tex. R. App. P. 47

131194F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KEITH WAYNE EDWARDS, Appellant

No. 05-13-01194-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas,
Trial Court Cause No. F12-16761-K.
Opinion delivered by Justice Fillmore, Chief Justice Wright and Justice Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 21st day of January, 2015.