**Reversed and Remanded and Plurality and Dissenting Opinions filed March 26, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00302-CR

---

**DUKE EDWARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 17-CR-1965**

---

### PLURALITY OPINION

A jury convicted appellant Duke Edward of felony assault of a family member as defined by section 71.0021(b) of the Texas Family Code. *See* Tex. Penal Code § 22.01(a)(1). The jury assessed appellant's punishment at sixty years in prison. *See id.* § 12.42(d) (establishing enhanced punishment of life in prison or a sentence between 25 and 99 years in prison if a "defendant has previously been finally convicted of two felony offenses . . . ."). In a single issue, appellant argues

that the trial court erred when it denied his motion for directed verdict because the State failed to prove he was in a "dating relationship" with the complainant. We agree with appellant that the State failed to present legally-sufficient evidence that he was in a dating relationship with the complainant. We do not reverse and render a judgment of acquittal however, because the jury, through its verdict, necessarily found every constituent element of the lesser-included offense of assault. We therefore reverse the trial court's judgment, remand the case to the trial court with instructions to reform the judgment to reflect a conviction for the offense of assault, and to hold a punishment hearing attendant to this post-reformation conviction.

## BACKGROUND

The complainant called 9-1-1 to report a disturbance at her apartment. Officer Richard Hernandez with the La Marque Police Department was dispatched to the complainant's residence. When he arrived on the scene Hernandez found the complainant in a state of hysteria. The complainant appeared to have injuries on her face, and blood was present on both her shirt and face. The complainant indicated to Officer Hernandez that appellant was responsible for her injuries, providing the name "Duke Edward" when Officer Hernandez asked what was happening. Moments later, Officer Hernandez found appellant sitting on a bed in the back bedroom of the apartment. Officer Hernandez took appellant into custody and placed him in the back of his patrol car while the second responding officer remained with the complainant. The La Marque Fire Department ambulance arrived while Hernandez was still at his patrol car with appellant.

Officer Hernandez initially testified that the complainant told him that "her boyfriend beat her up" when he first made contact with her. During cross-examination, Officer Hernandez admitted that the complainant did not identify

2

appellant as her "boyfriend" on the portion of the body camera video[1] showing his initial contact with the complainant, or during the 9-1-1 recording. A short time later, the following exchange occurred between appellant's attorney and Officer Hernandez:

> Q. And, again, I am asking a very, very specific question. So please answer the specific question. On the video that we just watched - - on that particular video, at no point in time did [the complainant] ever state to you that [appellant] was her boyfriend; is that correct?
>
> A. I believe that is incorrect.
>
> Q. On that specific video that we just saw - - I'm not talking about - - I'm talking about specifically what we just watched. Did [the complainant] ever say on that particular video we just watched that [appellant] was her boyfriend?
>
> A. I believe that's correct.
>
> Q. Okay. So you're telling us from the portion we just saw, we heard her state, "That's my boyfriend, [appellant]"?
>
> A. I believe that's incorrect.
>
> Q. You believe that's incorrect she said that?
>
> A. I believe it's incorrect. She didn't identify him as her boyfriend.

Officer Hernandez's body-camera video that was entered into evidence during appellant's trial ended while the complainant, the responding police officers, and the responding EMS personnel were still inside the complainant's apartment.[2] Other evidence in the record, in addition to what appears on the body-

---

[1] The trial evidence includes the arresting officer's body camera video showing his arrival at the scene. It recorded the entire initial encounter with the complainant and then the appellant, the securing of the scene, the detention of appellant in the back of the police vehicle, and the officer's subsequent encounter with the arriving EMS personnel.

[2] The body-camera video shows that, in addition to Officer Hernandez, a second police officer and two EMS paramedics were on the scene.

camera video, indicates that the on-site investigation had not been completed when the body-camera video ended. This evidence includes Officer Hernandez's testimony that he encouraged the complainant to go with EMS personnel to the hospital, and that he gave the complainant a family violence form. Officer Hernandez also testified that the complainant signed the family violence form. The form was not admitted into evidence however.

Officer Hernandez was also asked during cross-examination if he later returned to the scene to speak with potential eyewitnesses or with the complainant's neighbors. Officer Hernandez admitted that he had not. Officer Hernandez was also not aware of any other officers from the La Marque Police Department going to the apartment complex to interview neighbors or witnesses. Officer Hernandez also admitted that he did not review the lease for the complainant's apartment or speak with the complex management to investigate whether they had any information about appellant's connection with the apartment lease.

On re-direct, the prosecutor clarified with Officer Hernandez that the body-camera video shown during his direct testimony was only an excerpt. The prosecutor then asked Officer Hernandez about his interaction with the EMS paramedics who arrived on the scene in an effort to clarify the relationship between the complainant and appellant. The following exchange then occurred:

Q. So, again, did you advise EMS of the situation when they arrived?

A. Yes, I did.

Q. What did you advise them?

A. I made contact with the medics. I told them the victim was upstairs with another officer. She needed to be checked out. She was pretty beaten up.

4

Q. Did you describe the relationship between the two?

A. I am really not sure of that, if I told them whether or not - - if I told them that he was her boyfriend or not.

Finally, the prosecutor asked Officer Hernandez:

Q. Why did you make the decision at that point to arrest [appellant]?

A. I made the decision based on the injuries that were observed on [the complainant] and her statement.[3]

Amanda Black, an emergency medical technician from the La Marque Fire Department, was also dispatched to the scene. Once on the scene, Black observed the complainant with multiple lacerations on her face, as well as multiple contusions on her forehead. According to Black, the complainant told her that "her boyfriend beat her up." Later, during cross-examination, Black had the following exchange with appellant's attorney:

Q. And you, yourself, have no firsthand knowledge of the relationship - - at least you didn't at the time of Duke Edward or [the complainant] at the time?

A. Firsthand? Her telling me?

Q. Yes, ma'am.

A. No, she didn't tell me.

Q. So any information regarding the relationship between [the complainant] and Duke Edward, you received from someone else, correct?

A. Correct.

Earlier in that same cross-examination, the following exchange occurred:

Q. When you arrived at the scene, as far as the information you first learned, was that information provided to you by Officer

---

[3] Since the detention of appellant is shown on the body camera video footage, the only statement in evidence was shown on the same body camera video.

Hernandez?

A.     Yes.

Q.     So the information regarding the relationship between [complainant] and [appellant], that information was provided to you by the officer?

A.     Yes.

Q.     As far as them being boyfriend and girlfriend?

A.     Yes.

Q.     And you wouldn't have placed that in the report without that information?

A.     Most likely.

Q.     Okay.

The State sought to admit the complainant's medical records related to the incident. The medical records initially reflected a dating relationship between appellant and the complainant, but appellant lodged a hearsay objection to their admission. The following exchange then occurred at the bench:

THE COURT:     We don't know who said that. She said she didn't say it and her partner wrote it. The partner is not here. It's still objectionable with hearsay. I am sustaining his objection to hearsay. Despite the fact it's a business record, you can still object to hearsay records in there. She can't testify to --

PROSECUTOR:     Yes, ma'am.

THE COURT:     She can't testify she ever told her. So the complaining witness never communicated to her that was her boyfriend as stated in that record, right?

PROSECUTOR:     Yes, ma'am.

THE COURT:     Okay. So go ahead.

PROSECUTOR:     If I may: It is hearsay within hearsay, I agree; but I have two levels of hearsay. I have a business records affidavit, which covers the entirety of it

6

|  | and comes in for the purpose of medical diagnosis. |
|---|---|
| THE COURT: | The relationship is not for purpose of medical diagnosis. |
| PROSECUTOR: | I would say if she said that to the treating person, it would come in as that. |
| THE COURT: | We don't have the treating person here. It's hearsay. You know what? I have made my ruling. You can take me up on appeal, whatever you want to do. I am sustaining about the hearsay. She can't testify she was told that. I don't know if you want to wait to bring another witness in. We can certainly wait before you want to proffer that into evidence. |

Rather than wait for another witness, the State redacted all references to the relationship between appellant and the complainant, and the redacted documents were admitted into evidence.

Notwithstanding the very prominent cross-examination of the witnesses as to the basis of their knowledge of the dating relationship, and the inadmissibility of the medical record evidence as it relates to establishing the dating relationship, the State never called any other witnesses.

At the conclusion of the State's case, appellant moved for a directed verdict. Appellant argued that the State did not meet its burden to prove that a "dating relationship" existed between appellant and the complainant. The trial court denied appellant's motion. Appellant subsequently stipulated that he had previously been convicted of family violence assault. The jury found appellant guilty of felony assault against a family member. During the punishment phase of appellant's trial, the State offered evidence showing that appellant had been previously convicted of two felony offenses. Appellant pled true to both enhancement paragraphs in his indictment. The jury subsequently assessed appellant's punishment at sixty years in prison. This appeal followed.

7

## I.     Standard of review

A challenge to the denial of a motion for a directed verdict is a challenge to the legal sufficiency of the evidence. *Gabriel v. State*, 290 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2009, no pet.). In reviewing the sufficiency of the evidence to support a conviction, we must consider all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1973); *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012). In our review, we consider all of the evidence in the record, whether admissible or inadmissible. *Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013)). We measure the sufficiency of the evidence supporting a conviction by comparing the evidence presented during the trial to the elements of the offense as defined in a hypothetically-correct jury charge. *Hernandez v. State*, 556 S.W.3d 308, 312 (Tex. Crim. App. 2017). The jury is the sole judge of the credibility of witnesses and the weight afforded their testimony. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may choose to believe or disbelieve all or a portion of a witness's testimony, and we presume that the jury resolved any conflicts in the evidence in favor of the prevailing party. *See Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016) ("We defer to the jury's finding when the record provides a conflict in the evidence."); *Jackson v. State*, 495 S.W.3d 398, 405 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish

guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Evidence is sufficient if the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Further, the jury's verdict will be upheld unless "a rational factfinder must have had a reasonable doubt as to any essential element." *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).

## II.   The record contains legally insufficient evidence that appellant and the complainant were in a dating relationship.

A person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." Tex. Penal Code § 22.01(a)(1). The offense is generally a Class A misdemeanor, but is heightened to a third-degree felony if the offense is committed against a person with whom the defendant has a "dating relationship." *See id.* § 22.01(b)(2); Tex. Fam. Code § 71.0021(b). The Texas Family Code defines "dating relationship" as a "relationship between individuals who have or had a continuing relationship of a romantic or intimate nature." Tex. Fam. Code § 71.0021(b). A casual acquaintanceship or ordinary fraternization in a business or social context does not however, constitute a "dating relationship." *Id.* § 71.0021(c). The Family Code provides that "the existence of such a relationship shall be determined based on consideration of: (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship." *See id.* § 71.0021(b). The difference between a conviction for misdemeanor assault and a conviction for third-degree felony assault of a family member turns on whether there is sufficient evidence of a "dating relationship" between appellant and the complainant. Tex. Penal Code § 22.01(b)(2).

9

Appellant argues that the evidence presented by the State was not sufficient for a rational factfinder to conclude beyond a reasonable doubt that appellant was in a "dating relationship" with the complainant because the State failed to present any evidence of the three factors mentioned in section 71.0021(b) of the Family Code. We agree with appellant.

On appeal, the State points to what it labels circumstantial evidence that appellant was in a "dating relationship" with the complainant. This evidence incudes Officer Hernandez's testimony that he found appellant in the bedroom of the complainant's apartment, a location that the State argues creates an inference of intimacy between the complainant and appellant. Next, the State points to the fact that complainant and appellant were alone with each other in the complainant's apartment when Officer Hernandez arrived on the scene. The State asserts that this reinforces a determination that they were in a "dating relationship." We conclude that, based on this evidence, a factfinder could do no more than speculate on the existence of a dating relationship which is insufficient to support a conviction. *See Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013) (stating that, under legal sufficiency standard, "evidence may be legally insufficient when the record contains either no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt."); *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007) (defining speculation as "mere theorizing or guessing about the possible meaning of facts and evidence presented" and stating that it is insufficient to support a criminal conviction); *Prestiano v. State*, 581 S.W.3d 935, 942 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (stating that a factfinder is not permitted to draw conclusions based on speculation because doing so is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt).

The State next suggests that the testimony of Officer Hernandez and Amanda Black, one of the paramedics dispatched to the scene, provides direct evidence of the complainant and appellant's relationship status. Officer Hernandez did initially testify that the complainant told him that her boyfriend beat her up and she identified appellant as the person who assaulted her. Black testified the complainant told her that "her boyfriend beat her up."[4] The jury, however, is not permitted to disregard Officer Hernandez's later testimony, given after viewing the body-camera video that had been admitted into evidence, admitting that the complainant did not identify appellant as her boyfriend, or Black's admission during cross-examination that the complainant did not tell her that appellant was her boyfriend. Additionally, the body-camera video is in the appellate record and a review of the video establishes that the complainant never identified appellant as her boyfriend during the video. Thus, we conclude that Officer Hernandez's and Black's testimony cannot support a determination that appellant and the complainant were in a dating relationship. *See Britain v. State*, 392 S.W.3d 244, 249 (Tex. App.—San Antonio 2012, *aff'd Britain*, 412 S.W.3d at 523)) ("Although the jury is permitted to draw appropriate conclusions and inferences from the evidence, it was not rational for the jury to conclude the requisite knowledge based on the record before us."). We therefore sustain in part appellant's issue on appeal.

Concluding legally insufficient evidence supports appellant's conviction for dating-relationship assault does not end our inquiry however. In this situation the Court of Criminal Appeals has directed this court to answer two questions: "(1) in the course of convicting the appellant of the greater offense, must the jury have

---

[4] Appellant lodged hearsay objections to both Hernandez's and Black's testimony. The trial court overruled both objections and appellant has not challenged those decisions in this appeal.

11

necessarily found every element necessary to convict the appellant for the lesser-included offense; and (2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense?" *Thornton v. State*, 425 S.W.3d 289, 300 (Tex. Crim. App. 2014). If the answer to both questions is yes, then we are required "to avoid the unjust result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense." *Id.*

In this case, appellant has challenged the sufficiency of the evidence only for the aggravating element of the charged offense, the existence of a dating relationship with the complainant. *See* Tex. Penal Code § 22.01(b)(2) (elevating assault offense from a Class A misdemeanor to a third-degree felony if the defendant commits the offense against a person with whom the defendant has a "dating relationship"). He has not challenged the sufficiency of the evidence supporting any of the other elements of the dating-relationship assault offense, which are the same as for misdemeanor assault. *See* Tex. Penal Code § 22.01(a)(1) (A person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another"). Having examined the record evidence summarized above, we conclude that the evidence is legally sufficient to support a conviction for misdemeanor assault. *See Tyler v. State*, 563 S.W.3d 493, 498–99 (Tex. App.—Fort Worth 2018, no pet.) (concluding evidence legally sufficient to support misdemeanor assault conviction). We must therefore, reform the judgment to reflect a conviction for the lesser-included offense of misdemeanor assault. *Thornton*, 425 S.W.3d at 300.

## CONCLUSION

Having determined that the evidence is legally insufficient to support appellant's conviction for dating-relationship assault, and that the evidence is

legally sufficient to support a conviction for the lesser-included offense of misdemeanor assault, we reverse the trial court's judgment, remand the case to the trial court with instructions to reform the judgment to reflect a conviction for the offense of assault, and to hold a punishment hearing attendant to this post-reformation conviction.


/s/ Jerry Zimmerer
Justice


Panel consists of Justices Christopher, Bourliot, and Zimmerer (Christopher, J. dissenting, Bourliot, J. concurring without opinion).

Publish — TEX. R. APP. P. 47.2(b).